ROBERT M. LEATHERBURY et ux.
*v.* FRANK PETERS et al.

[No. 120, September Term, 1974.]

*Decided February 13, 1975.*

The cause was argued before MOYLAN, MENCHINE and DAVIDSON, JJ.

*William W. Grant* for appellants.

*James Alfred Avirett* and *W. Dwight Stover* for appellees.

MENCHINE, J., delivered the opinion of the Court.

Robert M. Leatherbury and Phyllis Leatherbury, his wife (Leatherburys), filed a bill asking that prospective use of property for a quarry operation be declared a nuisance; that its owners be enjoined from using the property for quarry purposes and that they have other and further relief. The action was filed against Gaylord Fuel Corporation, doing business as Gaylord Stone, a Virginia corporation (Gaylord) as owner, against James Paul Sebold and Edna Sebold, his wife, as mortgagees and against Frank Peters as President of Gaylord. On motion and over the objection of appellants, the individual defendants were dismissed as party-defendants. The case then went to trial on the merits against Gaylord, resulting in an order dismissing the bill of complaint. The Leatherburys have appealed.

The bill of complaint had alleged that the Leatherburys were the owners of an 80 acre parcel of land in Garrett County, Maryland, and that Gaylord was the owner of a 33.06 acre parcel of land adjacent thereto; that Gaylord was proposing to operate a limestone quarry upon its land in such a way that: the discharge of waste waters from the quarry into nearby Hoyes Run; the discharge of limestone dust into the air; and the loud noises resulting from its operation would combine to make the Leatherburys' home unfit for use as a dwelling. It was alleged that limestone dust, noise and water pollution from the respondent's quarry would constitute a nuisance; would cause irreparable injury; that the nuisance would be continuing and thus would result in a multiplicity of suits unless operation of the

quarry was enjoined. It was not alleged that there was a zoning impediment in the proposed use of the land.

It is well-established that courts of equity may intervene to prohibit a threat of harm that has not yet occurred. A leading case in the country is *Hamilton Corporation v. Julian*, 130 Md. 597, 101 A. 558. In *Hamilton* the Court said at 601-02 [560]:

> "The real question in all such cases, as stated by the authorities, is whether the nuisance complained of will or does produce such a condition of things as in the judgment of reasonable men, is naturally productive of actual physical discomfort to persons of ordinary sensibilities and of ordinary tastes and habits, and as in view of the circumstances of the case is unreasonable and in derogation of the rights of the party."

See also: Prosser, Law of Torts, Ch. 15, § 90 at 603 (4th ED. HB, 1971); Annotation 7 A.L.R. 749, *et seq.*

In the subject case there was directly conflicting testimony by witnesses offered by the Leatherburys on the one hand, and by Gaylord on the other upon the question whether there would be such discharge of waste water, or such discharge of dust into the air, or the creation of such noises as would be naturally productive of actual physical discomfort to persons of ordinary sensibilities and of ordinary tastes and habits. The trial judge heard this conflicting testimony and said in his written opinion:

> "The operation of a stone quarry is an essential and lawful business and is not a nuisance per se; furthermore, the court was more impressed with the expert witnesses produced by the Respondents than those of the Complainants, especially with reference to new and modern scientific advances and developments of modern machinery for the control of noise, air and water pollution. The testimony being in effect that there would be no undue noise, air or water pollution which would

constitute a nuisance or violate any governmental regulation or standards pertinent to the operation of a stone quarry."

The record on appeal furnishes abundant support for the finding of the trial judge. We cannot find his determination to be clearly erroneous. Rule 1086.

In such circumstances the case is controlled by *City of Bowie v. County Commissioners,* 260 Md. 116, 271 A. 2d 657, and cases therein cited. In *City of Bowie* the Court of Appeals restated with approval the language used in the earlier case of *Adams v. Michael,* 38 Md. 123 (1873), saying at 126-27:

" 'The granting of injunctions on applications of this character [enjoining prospective harm] involves the exercise of a most delicate power, and the Court is always reluctant to act *except in cases where the right is clear and unquestioned, and the facts show an urgent necessity.* The general rule is, that an injunction will only be granted to restrain an *actual existing nuisance*; but where it can be plainly seen that acts which, when completed, will certainly constitute or result in a grievous nuisance, or where a party threatens, or begins to do, or insists upon his right to do certain acts, the Court will interfere, though no nuisance may have been actually committed, if the circumstances of the case enable the Court to form an opinion as to the illegality of the acts complained of, and the irreparable injury which will ensue.' "

The testimony in the subject case falls far short of such a showing.

In a second string to their bow, the Leatherburys contend that Natural Resources Article Section 1-302 confers upon them special standing to sue stemming from the following language in subsection (d):

"Each person has a fundamental and inalienable right to a healthful environment, and each person

"has a responsibility to contribute to the protection, preservation, and enhancement of the environment."

We hold that accomplishment of the purposes sought to be subserved by Sections 1-301 to 1-304, inclusive, of that Article (Ch. 702, Acts of 1973) was committed by the Legislature to "State Agencies" as therein defined. The Legislature did not intend to create new or enlarged actionable rights under the statute.

We will not assume that State Agencies will not abide by the strictures of those sections of the code, or assume that the State Department of Health and Mental Hygiene will shirk the statutory obligation imposed upon it by Article 43, Section 691, *et seq.*: (a) to establish standards for air quality control; (b) to assure the enforcement of such standards or (c) to properly authorize issuance of required permits.[1]

The decision that we have reached makes it unnecessary to consider: (1) the propriety of the order dismissing the complaint as to the individual defendants; or (2) the propriety of the rejection of evidence as to the value of appellants' property on the issue of damages.

We find no error.

> *Order dismissing Bill of Complaint affirmed.*
> *Costs to be paid by appellants.*

---

1. We note that the Department is conscious of its obligation under law and active in carrying out its mandates. See: Maryland Register, Volume 1, No. 3, p. 167; No. 4, p. 231; No. 5, p. 258; No. 6, p. 307.