## MONTGOMERY COUNTY, MARYLAND *v.* ONE PARK NORTH ASSOCIATES

[No. 198, September Term, 1974.]

*Decided June 9, 1975.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*Charles S. Rand, Assistant County Attorney*, with whom were *Richard S. McKernon, County Attorney*, and *Robert G. Tobin, Jr., Deputy County Attorney*, on the brief, for appellant.

*David N. Webster*, with whom were *Paul R. Connolly, J. Alan Galbraith* and *Williams, Connolly & Califano* on the brief, for appellee.

MURPHY, C. J., delivered the opinion of the Court.

One Park North Associates (OPNA) applied to the Washington Suburban Sanitary Commission (WSSC) in May of 1972 for sewer connection and hookup authorizations for a a two-level retail store and office complex which it proposed to construct in Montgomery County, Maryland. OPNA's application was pending before the WSSC when, on August 16, 1973, the Secretary of Health and Mental Hygiene (the Secretary), acting pursuant to powers vested in him by Maryland Code (1971 Repl. Vol.) Art. 43, passed an order declaring that the sewerage facilities owned and operated by the WSSC in designated basins tributary to the Blue Plains treatment plant — including the Little Falls basin where OPNA's property was located—were inadequate. The Secretary's order specified that "the capability of sewerage

facilities at the wastewater treatment plant at Blue Plains to provide adequate treatment is being exceeded, which conditions continue to cause discharges of raw and inadequately treated sewage into the waters of the State, which waters are being, or are liable to become polluted in a way dangerous to health, thereby constituting a menace and nuisance prejudicial to the health, safety and comfort of the public." With exceptions not here pertinent, the Secretary's order prohibited issuance by the WSSC of any sewer "authorization, connection, or hookup within [the designated] basins tributary to the Blue Plains Plant," without his approval.[1]

On September 26, 1973, OPNA sought the Secretary's approval for a sewer and water authorization, connection and hookup for its proposed complex. OPNA's application recited that water and sewer lines of adequate capacity were immediately available to the site in public rights of way; that Phase I of the proposed complex would be two years in construction and when completed would, according to WSSC engineering calculations, generate a sewer volume of 31,987 gallons per day; that during the period of construction of Phase I, OPNA would effect an immediate reduction of sewer flow of 40,796 gallons per day into the Blue Plains Plant; that of this reduced daily sewer flow, 37,796 gallons would result from the installation of water reclamation systems on two commercial car wash operations which OPNA controlled in basins tributary to the Blue Plains Plant; that the remaining

---

1. The Secretary is the head of the Department of Health and Mental Hygiene. Code (1971 Repl. Vol.) Art. 41, § 206. All the powers formerly vested in the State Board of Health were transferred by § 1H of Article 43 to the Secretary; that section provides, in effect, that whenever the term "State Board of Health" is used in the laws of the State, it shall be deemed to refer to the Secretary unless such a construction would be unreasonable.

Under Art. 43, § 388, the Secretary is vested with "general supervision and control over the waters of the State, insofar as their sanitary and physical condition affect the public health or comfort; and [the Secretary] may make and enforce rules and regulations, and order works to be executed, to correct and prevent their pollution." This section also empowers the Secretary to "examine all existing . . . sewerage systems and . . . to compel their operation in a manner which shall protect the public health and comfort, or to order their alteration, extension or replacement . . . ." Section 391 of Art. 43 authorizes the Secretary to issue orders governing the operation of inadequate sewerage systems.

3,000 gallons per day of reduced flow would be effectuated by disconnecting six active sewer connections on OPNA's property; and that as a result, there would be a permanent reduction of flow into Blue Plains, after Phase I was completed, of 8,809 gallons per day, or 3,215,285 gallons annually. Because of the proposed reductions of sewer flow, both immediate and permanent, OPNA urged the Secretary to make an exception to his order of August 16, 1973.

By a letter dated October 19, 1973, the Secretary advised OPNA that "such an exception as you request would constitute a clear violation of the intent of our Orders which are to prohibit further discharges of raw or inadequately treated sewage into the waters of the State." In his letter, the Secretary stated that OPNA could appeal his decision to the Board of Review of the Department of Health and Mental Hygiene (the Board).

OPNA noted an appeal to the Board on November 1, 1973, alleging that the Secretary's decision not to grant the exception was "arbitrary, capricious and unreasonable." A hearing was held on December 20, 1973, before the Board. The Attorney General appeared on behalf of the Secretary; he maintained that even if the water reclamation devices — which "do not have a track record" and are "conceptual theories" — operated to decrease the amount of water used to carry the organic material, the organic load itself, which causes the pollution to the State's waters, would not thereby be decreased. In rebuttal, OPNA argued that its water savings systems were "tested, tried and proven." It stated:

> "The only people who will be coming to this shopping center will be those who are serviced in this area by the Blue Plains Treatment Plant. . . . [T]hose people . . . will either flush at home or they will flush here."

OPNA pointed out that its proposed complex was designed to service the Metropolitan Washington area, all of which was serviced by the Blue Plains Treatment Plant and that, as a result, the overall volume of the organic load in the sewage would not be increased. It argued:

"So if somebody comes from Virginia to shop there or someone from 12th and M Street, Northwest, comes to shop in Montgomery County, they are still using that same old Blue Plains Treatment Plant and it is really just a trade off. Your volume doesn't increase. Your pollutants don't increase but your volume is being tremendously decreased."

Speaking on the Secretary's behalf, Mr. Bingley, a sewage engineer, said:

"[W]e are not talking about pollution due to a volume of water or a volume of liquid. We are talking about pollution due to organic material discharged by the human being. This amount of organic material discharged by the human being can be conveyed to a treatment facility by 10 gallons or by a hundred gallons. Ten gallons admittedly is less hydraulic volume but the organic load, the stuff that really causes pollution, is still there regardless of the quantity of water.

". . . [W]e are not talking about real volume as a pollution, we are talking about a volume of water carrying a pollution load."

"We can decrease the volume of water but we haven't decreased the pollution problem. We have only decreased the possibility of sewage overflow."

\* \* \*

"[I]f you decrease the volume and increase the number of people, you are automatically increasing the organic material."

\* \* \*

"In a commercial enterprise such as a shopping center or something the public uses, I submit to you that there are plenty of people outside the area who are coming in to use that facility. That is, coming in to shop."

Asked whether the water reclamation devices to be installed

on the car wash operations would reduce the chemical pollutants, Bingley said they would not.

By an order dated January 21, 1974, the Board concluded that OPNA had "presented a factual case for the relief of sewage effluent in the aggregate by a combination of water saving devices in two car wash operations and the deactivation of housing in the area of construction of the proposed shopping center . . . ." In its order, the Board found that OPNA presented "[a] reasonable alternative to sewage overflow . . . in the sewage drainage basin effected by the proposed project"; that the State failed "to contradict the reasonable conclusion that there would be no threat to the health and welfare of the citizens of the State in the implementation of this total plan"; and that "[t]he State and its subdivisions will be well served if the project is completed." The Board "set aside" the Secretary's order of August 16, 1973 and directed that OPNA "shall be granted" the requisite authorizations by the WSSC.

While neither a party nor an intervenor in the proceedings before the Secretary or the Board, Montgomery County (the County) noted an appeal to the Circuit Court for Montgomery County from the Board's order of January 21, 1974. The County alleged that it was required by § 387C of Art. 43 to provide for the orderly expansion and extension of community sewerage systems and to provide for adequate sewage treatment facilities to prevent the discharge of untreated or inadequately treated sewage into the waters of the State. It maintained that the Board's order had undermined the authority vested in the County under the statute; that the Board had acted in excess of its statutory authority; and that the Board was without power to set aside an order of the Secretary, or to direct the issuance of a sewer connection authorization, which was a function vested exclusively in the WSSC. OPNA challenged the County's right to appeal; it asserted that, because the County was not a party, it had no standing to appeal from the Board's decision.

In an opinion dated September 11, 1974, the court (Shure, J.) concluded that the County, though not a party in the

proceedings below, was aggrieved by the Board's order and had a right to appeal under the Administrative Procedure Act, Code Art. 41, § 244 *et seq.* and subtitle B (Administrative Agencies — Appeal From) of Chapter 1100 of the Maryland Rules. The court nevertheless concluded that the action taken by the Board was within its authority and was neither arbitrary nor capricious. This appeal by the County from the court's order then followed.

The County maintains that, since the Secretary's decision not to grant the exception was quasi-legislative, the Board had no jurisdiction in the matter, its jurisdiction being limited to reviewing the Secretary's quasi-judicial decisions. The County contends that legislative orders or regulations passed by the Secretary involving sewerage facilities are reviewable only under the provisions of Art. 43, § 404; that section authorizes any person, including a county, which is dissatisfied with any order or regulation of the Secretary passed pursuant to the provisions of the "Water, Ice and Sewerage" subtitle of Art. 43 (§§ 387-406) to appeal therefrom within ten days after the service of such order or regulation. OPNA contends that the Board had jurisdiction, that its order was within its statutory authority, and that the lower court did not err in affirming the Board's order. OPNA also argues that the County lacks standing to appeal.

Insofar as here pertinent, the Board of Review of the Department of Health and Mental Hygiene is empowered by Art. 41, § 206A to

> "hear and determine appeals from those decisions of the Secretary or any departments or other agencies within the Department of Health and Mental Hygiene which are subject to judicial review under § 255 of this article or under any other provisions of law."

Section 255 of Art. 41 sets forth the right to judicial review under the Administrative Procedure Act; it provides in subsection (a):

> "Any party aggrieved by a final decision in a

contested case, whether such decision is affirmative or negative in form, is entitled to judicial review thereof under this subtitle."

Section 244 (c) of Art. 41 defines a "contested case" as

"a proceeding before an agency in which the legal rights, duties, or privileges of specific parties are required by law or constitutional right to be determined after an agency hearing."

Section 206B of Art. 41, entitled "Appeals to board of review," permits an appeal by "[a] party aggrieved" by a decision of the Secretary for which an appeal to the Board is provided by § 206A. In connection with such appeals, the section directs that the Board "shall adopt procedures as provided in the Administrative Procedure Act . . . and shall in all other respects be governed by the provisions of said act." The section further provides:

"The decision of the board shall be the final agency decision for purposes of judicial review under § 255 of this article or for purposes of any other provisions of law permitting appeals to the courts from decisions of agencies included within the Department of Health and Mental Hygiene. Appeals from decisions of the board shall be as prescribed in the Administrative Procedure Act or by the substantive law applying to commission, department, board or other instrumentality whose decision is being appealed."

Notwithstanding the County's interest in the Secretary's order of August 16, 1973, in OPNA's proposal, and in the Board's order of January 21, 1974, we hold that, not being a party to any of these proceedings, the County was not a "party aggrieved" under § 255 of Art. 41 and hence was not entitled to judicial review under the provisions of that section. That the County may have been "aggrieved" by the Board's order does not afford it standing as a party to the proceeding. Nor do Maryland Rules B1 and B3, upon which the County places reliance, afford it standing. These rules do

no more than set forth procedures governing appeals to the courts from administrative agencies. Rule B1 specifies that such rules "apply to the review of any final action of an administrative agency by a court where such review is specially authorized by statute, regardless of the form of such review . . ."; Rule B3 provides that "[a]n appeal may be taken by a person now or hereafter authorized by statute to appeal."

The County asserts that it has standing to appeal by reason of the provisions of § 256A of Art. 41; that section, part of the Administrative Procedure Act, provides:

> "For the purposes of this subtitle, the political subdivisions of this State and their agencies and instrumentalities have the status of an interested person, petitioner, or party, as the case may be, in all matters including appeals."

While we noted in *Bd. of Ex. of Land. Arch. v. McWilliams*, 270 Md. 383, 387, 311 A. 2d 792, 795 (1973), that § 256A "constituted an enlargement of the right of appeal," nothing in the section invests the County with status as an aggrieved party where it was not a party to the proceedings before the administrative agency. What the section does is to remove any question of the right of a county, its agencies and instrumentalities to participate in proceedings under the Administrative Procedure Act to the same extent as any other legal entity.

As heretofore indicated, the Board of Review has jurisdiction to determine appeals from those decisions of the Secretary, which are subject to judicial review "under § 255 . . . or under any other provisions of law." Section 404 of Art. 43 authorizing appeals from orders or regulations of the Secretary would appear to qualify as another provision of law permitting judicial review of decisions of the Secretary. But nothing in that section, assuming its applicability, invests the County with standing to appeal from an order of the Board of Review where it was not a party in the proceedings.

In sum, since the County lacks standing and no other

party lodged an appeal in these proceedings, we are without jurisdiction to entertain this appeal.

While we must dismiss the County's appeal for lack of standing, we think it important that we indicate our disagreement with the advice given by the Secretary in his letter of October 19, 1973 to OPNA that an appeal to the Board would lie from his decision denying OPNA's requested exception. As already noted, the Board's jurisdiction under § 206A is to hear and determine appeals from those decisions of the Secretary which are subject to judicial review under § 255 of Art. 41 (the Administrative Procedure Act), viz., a final decision "in a contested case." The Secretary's denial of OPNA's request for an exception from his order of August 16, 1973, did not involve a contested case as that term is defined in § 244 (c); it was not a proceeding in which OPNA's "legal rights, duties, or privileges . . . [were] required by law or constitutional right to be determined after an agency hearing." *See* Rules of Procedure for Hearings before the Secretary of Health and Mental Hygiene, § 10.01.02-1.

Nor does it appear that the Board obtained jurisdiction because the Secretary's decision was under § 206A, subject to judicial review under "any other provisions of law." OPNA did not appeal to the Board from the Secretary's order of August 16, 1973; it appealed from the refusal of the Secretary on October 19, 1973 to grant an exception to his order. Since the Secretary's letter of October 19, 1973 was not an "order" within the contemplation of Art. 43, § 404, the provisions of § 404 of Art. 43 were not implicated in OPNA's appeal to the Board, and consequently no basis for the exercise of the Board's jurisdiction can be attributed to the provisions of that statute. Accordingly, it would appear that the Board's order was a nullity since it was without jurisdiction to enter its order of January 21, 1974.

> *Order of the Circuit Court for Montgomery County affirming the order of the Board of Review vacated; appeal dismissed; costs to be paid by Montgomery County.*