LEATHERBURY ET UX. *v.* GAYLORD FUEL
CORPORATION D/B/A GAYLORD STONE
COMPANY ET AL.

[No. 189, September Term, 1974.]

\* \* \*

LEATHERBURY ET UX. *v.* PETERS ET AL.

[No. 26, September Term, 1975.]

*Decided November 24, 1975.*

The causes were argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*William W. Grant* for appellants.

No. 189, submitted on brief by *Francis B. Burch, Attorney General,* and *Martin A. Ferris, III, Special Assistant Attorney General,* for appellees.

No. 26, *James Alfred Avirett* and *W. Dwight Stover* for appellees.

ELDRIDGE, J., delivered the opinion of the Court.

These appeals involve two separate actions by the same landowners seeking (1) to overturn under the Administrative Procedure Act the issuance by the Department of Health and Mental Hygiene of a permit for the installation of limestone processing equipment on adjacent land, and (2) to obtain an anticipatory injunction to restrain the proposed operation of a limestone quarry on the neighboring property on the ground that the quarry will constitute a nuisance.

Robert and Phyllis Leatherbury are the owners of an 80 acre farm in Garrett County. In November 1973 the Gaylord Fuel Corporation, a Virginia corporation doing business as Gaylord Stone Company, purchased a 33 acre tract of land adjacent to the Leatherburys' farm. In order to construct a limestone quarry on its property, Gaylord obtained a grading permit from Garrett County on November 16, 1973, to remove soil for open face mining. On Friday, November 30, 1973, Gaylord applied for a permit from the Maryland Department of Health and Mental Hygiene, Bureau of Air Quality Control, to install limestone crushing and air pollution control equipment. The requisite permit was issued on Monday, December 3, 1973.[1]

After the Leatherburys became aware of the issuance of the permit for a limestone crushing plant, they brought suit on January 2, 1974, in the Circuit Court for Garrett County (Hamill, J.), against the Gaylord Fuel Corporation and the Maryland Department of Health and Mental Hygiene, seeking to have the administrative grant of the permit reversed. The Leatherburys alleged that no public notice was

---

1. Maryland Code (1957, 1975 Cum. Supp.), Art. 43, § 706, authorizes the Department of Health and Mental Hygiene to require a permit before any person "builds, erects, ... operates, ... or uses any article, machine, equipment or other contrivance specified ... the use of which may cause emissions into the air ...." In accordance with such statutory authorization, the Department has by regulations required a permit for installations such as the one involved here.

given of the Department's action, and that Gaylord's permit application did not contain the information required by the Department in order for the Department to determine whether the permit should be granted.

The Department of Health and Mental Hygiene filed a demurrer, contending that, on several grounds, the Leatherburys had no standing to maintain the action. The trial court sustained the demurrer, and the Leatherburys have taken this appeal.[2]

In addition to challenging the issuance of the permit, the Leatherburys filed a separate action against Gaylord in the Circuit Court for Garrett County (Hamill, J.), seeking to have the proposed quarry declared a nuisance, and requesting a temporary and a permanent injunction against its operation.[3] The bill of complaint alleged that the Leatherburys used their property for farming and grazing horses. It further alleged that the proposed activities of Gaylord would result in air, noise and water pollution and would adversely affect their property. Specifically, the Leatherburys alleged that the limestone dust would be carried by natural air currents to their land, destroying vegetation and killing fish in the streams and ponds; that the dust would mar the appearance and utility of their property; that their health would be adversely affected by inhalation of limestone dust particles; and that there would be excessive noise from the blasting and operation of the machinery. After a trial, the chancellor found that, in light of the testimony, the Leatherburys' action was premature, stating that "the mere anticipation or possibility of any injury is no basis for the granting of an injunction." The chancellor therefore ordered that the bill of complaint be dismissed.

---

**2.** Since the appeal was noted prior to January 1, 1975, initial appellate jurisdiction over this type of case was in this Court rather than the Court of Special Appeals. Code (1974), §§ 12-307 (b) and 12-308 of the Courts and Judicial Proceedings Article.

**3.** In addition to Gaylord, the bill of complaint named Frank Peters, James Paul Sebold and Edna Beryl Sebold as defendants. However, the trial judge granted a motion to dismiss as to the three individual defendants.

On appeal to the Court of Special Appeals from the chancellor's refusal to grant an injunction, the Leatherburys argued that the chancellor erred in applying the law of nuisance to the facts of this case. They also relied upon their asserted "right to retain a pollution free environment" under the Maryland Environmental Policy Act, Code (1974), § 1-302 of the Natural Resources Article. The Court of Special Appeals, in an opinion by Judge Menchine, affirmed, holding that, under the standards for granting anticipatory injunctions, the chancellor's finding of prematurity was not clearly erroneous. *Leatherbury v. Peters,* 24 Md. App. 410, 332 A. 2d 41 (1975). Additionally, the Court of Special Appeals held that the Leatherburys derived no special rights to contest Gaylord's activities by virtue of the Maryland Environmental Policy Act.

Because of the pendency before this Court of the Leatherburys' appeal in the permit action, and as both cases had a common object of stopping the future operation of the proposed limestone quarry, we granted the Leatherburys' petition for a writ of certiorari to review the Court of Special Appeals' affirmance of the chancellor's decision in the nuisance action.

## (1)

### *The Issuance of the Permit*

### *(No. 189, September Term, 1974)*

The Leatherburys advance two broad contentions in support of their right to challenge the administrative grant of the permit. They argue that they are "entitled to participate in the proceedings involving the issuance of a permit" by virtue of the Federal Clean Air Act, 42 U.S.C. 1857 *et seq.,* which, together with regulations enacted pursuant to it, require that a state's air quality control implementation plan provide an opportunity for public comment on pending applications.[4] Additionally, the

---

4. The Leatherburys argue that notwithstanding Maryland's failure to implement a procedure for public review of applications, the provisions of the Federal Clean Air Act and of the regulations promulgated pursuant to

Leatherburys contend that they are "aggrieved" by the action of the Department of Health and Mental Hygiene and thus have standing to contest it. They argue that, as owners of adjacent land, they are directly affected by the quarry. They also rely upon the principles with respect to standing set forth in *Sierra Club v. Morton,* 405 U. S. 727, 92 S. Ct. 1361, 31 L.Ed.2d 636 (1972). Finally, they rely on the declaration of policy in the Maryland Environmental Policy Act, Code (1974), § 1-302 of the Natural Resources Article.[5]

In addition to disputing the Leatherburys' other contentions, the Department of Health and Mental Hygiene argues that the Leatherburys may not appeal the Department's action since they were not parties to the application proceedings. As the Leatherburys were not parties at the administrative level, the Department argues that they cannot be "parties aggrieved" within the meaning of the judicial review section of the Administrative Procedure Act, Code (1957, 1971 Repl. Vol.), Art. 41, § 255 (a).

We need not, and do not, rule upon any of the Leatherburys' contentions as to why they were entitled to seek judicial review of the administrative action granting the permit. Similarly, we do not reach most of the Department's arguments against the Leatherburys' entitlement to judicial review. While we do not agree with the Department's broad contention that the Leatherburys

---

it are applicable to Maryland under the supremacy clause, Art. VI, Clause 2, of the United States Constitution. The Department of Health and Mental Hygiene contends that the Leatherburys can derive no rights from the Federal Clean Air Act. The Department argues that if a state plan does not meet federal requirements, the Administrator of the Federal Environmental Protection Agency is thereby entitled to impose a satisfactory plan on the state. 42 U.S.C. 1857 C-5 (c). Thus, the Leatherburys' remedy, the Department concludes, is against the Federal Administrator for failing to enact a plan correcting the deficiency in Maryland's plan. No actionable rights, the Department urges, are created by the Clean Air Act in favor of Maryland citizens against the State for failure to include a provision for public review of applications.

5. The Department of Health and Mental Hygiene contends that the Leatherburys have no standing to contest its actions because in the Air Quality Control Act, Code (1957, 1971 Repl. Vol.), Art. 43, § 699, the Legislature expressed an intent not to create actionable rights for members of the general public.

may not seek judicial review because of their failure to appear at the permit proceeding before the Bureau of Air Quality Control, nevertheless we do hold that the Leatherburys cannot maintain this appeal because they failed to challenge the Bureau's action before the Board of Review of the Department of Health and Mental Hygiene. Assuming arguendo that the Leatherburys are aggrieved by the administrative action and have standing to obtain judicial review of it under the Administrative Procedure Act or any other provision of law, their action was properly dismissed because of their failure to exhaust their administrative remedies. Generally, where an administrative remedy is provided by statute, that remedy must be exhausted before the litigant may resort to the Courts. *Chertkof Trust v. Department,* 265 Md. 291, 289 A. 2d 314 (1972); *Gingell v. County Commissioners,* 249 Md. 374, 376-377, 239 A. 2d 903 (1968); *Gager v. Kasdon,* 234 Md. 7, 9-10, 197 A. 2d 837 (1964); *Shpak v. Mytych,* 231 Md. 414, 417, 190 A. 2d 777 (1963); *Poolesville v. County Council,* 24 Md. App. 347, 352-354, 330 A. 2d 711 (1975). While there are exceptions to the general rule, none is applicable to this case. *See Nottingham Village v. Balto. Co.,* 266 Md. 339, 357, 292 A. 2d 680 (1972); *Poe v. Baltimore City,* 241 Md. 303, 308-309, 216 A. 2d 707 (1966); *Poolesville v. County Council, supra,* 24 Md. App. at 350.

By Code (1957, 1971 Repl. Vol., 1975 Cum. Supp.), Art. 41, § 206A, the Legislature created the Board of Review of the Department of Health and Mental Hygiene to, *inter alia,*

> "hear and determine appeals from those decisions of the Secretary or any departments or other agencies within the Department of Health and Mental Hygiene *which are subject to judicial review under § 255 of this article or under any other provisions of the law."* (§ 206A (c), emphasis supplied.)

Appeals may be taken to the Board under § 206B of Art. 41 by

> "[a]ny person aggrieved by any decision or action or failure to act on the part of the Secretary or any

department or other agency within the Department of Health and Mental Hygiene for which an appeal to the Board of Review of the Department of Health and Mental Hygiene is provided by § 206A of this article . . . ."

Art. 41, § 206B, further provides that prior to commencing an action before the Board of Review the persons aggrieved by the initial agency decision must first "make known the basis of the complaint to the person or persons responsible for the decision or the conduct of the action . . . together with a request that it be reviewed." The person or persons who made the initial decision are then given thirty days to review the matter. If a "satisfactory resolution has not occurred" within thirty days, the complainant may under § 206B (1) and (2) seek further review from the head or governing body of the agency involved and then take an appeal to the Board of Review of the Department of Health and Mental Hygiene.[6] Section 206B (2), after providing for the procedures before the Board of Review, specifies that:

"The decision of the board shall be the final agency decision for purposes of judicial review under § 255 of this article or for purposes of any other provisions of law permitting appeals to the courts from decisions of agencies included within the Department of Health and Mental Hygiene."

The judicial review section of the Administrative Procedure Act, Code (1957, 1971 Repl. Vol.), Art. 41, § 255, provides for judicial review only of "a final decision." Thus, as the statutory scheme makes clear, a decision by the Board of Review is a prerequisite for judicial review under the Administrative Procedure Act.[7]

---

**6.** The provision for a complaint to the persons responsible for the initial agency decision, setting forth the basis of the complaint, as a precondition for prosecuting the appeal to the Board of Review, appears to have been designed particularly for persons in the position in which the Leatherburys allegedly are, who had no opportunity to participate in the initial agency proceeding, who later became aware of the initial agency decision, and who are "aggrieved" by that decision.

**7.** There is a limited exception to the Board of Review's jurisdiction set forth in the Air Quality Control Act, Code (1957, 1971 Repl. Vol.), Art. 43,

Assuming, without deciding, that the Leatherburys would be entitled to judicial review under the Administrative Procedure Act of the action granting the permit, as they contend, they failed to exhaust their remedy before the Board of Review. As stated by this Court in *Gingell v. County Commissioners, supra,* 249 Md. at 376-377:

"The reasons for requiring the exhaustion of administrative remedies before resorting to the courts are that it is within the expertise of the administrative agency involved to hear and consider the evidence brought before it and make findings as to the propriety of the action requested; courts would be performing the function that the legislature specified be done by the administrative agency; courts might be called on to decide issues that would never arise if the prescribed administrative remedies were followed; and where a statute provides a specific form of remedy in a specific case then this remedy must be followed."

A case very much in point is *Chertkof Trust v. Department, supra,* 265 Md. 291. In that case, the plaintiff attempted to challenge in the circuit court the proposed action by the State to build a storm drainage system. The State would have been required to obtain a permit from the Department of Natural Resources before proceeding with the action. The Court held that "should Chertkof care to object to the issuing of the permit" his remedy would be an appeal to the Board of Review of the Department of Natural Resources, as provided by Code (1957, 1971 Cum. Supp.), Art. 96A, § 54. Since he had not done so, the Court held that his action was properly dismissed since he had failed to

§§ 690-706. Under § 698, the Department of Health and Mental Hygiene may issue notices and corrective orders to persons found not to be in compliance with the Air Quality Control Act. Such persons may request a hearing before the Secretary or his designated hearing officer. Persons aggrieved by the decisions of the Secretary or hearing officer may not appeal to the board of review, but may seek direct review in court of the Secretary's or hearing officer's decision. This exception is only applicable to proceedings by the Department against an alleged violator, and has no application to an action by someone complaining about the issuance of a permit.

exhaust his remedies. Similarly, in *Poolesville v. County Council, supra,* 24 Md. App. 347, the Commissioners of Poolesville sought to attack in circuit court a sewage and water plan adopted by Montgomery County which did not include Poolesville. The Court of Special Appeals held that the Commissioners' complaint was properly dismissed because they had failed to exhaust their administrative remedies by appealing the county's action to the Board of Review of the Department of Health and Mental Hygiene, as provided by § 206B of Art. 41. *See also Shpak v. Mytych, supra,* 231 Md. 414.

Also pertinent is our recent decision in *Mont. Co. v. One Park North,* 275 Md. 193, 338 A. 2d 892 (1975), holding that where one has an opportunity to become a party to administrative proceedings, yet has failed to do so, normally he may not seek judicial review of the administrative action. In that case, Montgomery County appealed to the circuit court an action of the Board of Review of the Department of Health and Mental Hygiene which purported to reverse an earlier decision by the Secretary of Health and Mental Hygiene. We held that since Montgomery County was neither a party nor an intervenor in the proceedings before the Board of Review, it was not entitled to judicial review as a "party" under the Administrative Procedure Act. Turning to the instant case, the Leatherburys were not parties to the challenged administrative action, although they could have appealed to the Board of Review and thus become parties. In these circumstances, under our holding in *Mont. Co. v. One Park North, supra,* the Leatherburys have no "standing to appeal from an order ... where ... [they were] not ... [parties] to the proceedings." 275 Md. at 201. *See also Bryniarski v. Montgomery Co.,* 247 Md. 137, 230 A. 2d 289 (1967).

In conclusion, since the Leatherburys failed to invoke their administrative remedies by appealing to the Board of Review, we believe that their action was properly dismissed.

(2)

## The Requested Injunction Against the Proposed Quarry

*(No. 26, September Term, 1975)*

In this action the Leatherburys seek injunctive relief against the proposed operation of the limestone quarry on Gaylord's property. A landowner may obtain an injunction against a nuisance on adjoining land where it is shown that the injury is of such a character as to materially diminish the value of his property and seriously interfere with the ordinary comfort and enjoyment of it. *Five Oaks Corp. v. Gathmann,* 190 Md. 348, 353, 58 A. 2d 656, 659 (1948); *Swimming Club v. Albert,* 173 Md. 641, 645, 197 A. 146 (1938); *Adams v. Michael,* 38 Md. 123 (1873).

In this case, however, the Leatherburys seek to halt the activities of a stone quarry not yet in operation. Ordinarily, an injunction will not be granted to restrain future activity unless it is the type of activity which constitutes a nuisance per se. *King v. Hamill,* 97 Md. 103, 111, 54 A. 625 (1903). To constitute a nuisance per se, the activity sought to be enjoined must be a nuisance "at all times and under any circumstances regardless of location or surroundings." *Adams v. Commissioners of Trappe,* 204 Md. 165, 170, 102 A. 2d 830 (1954). The Leatherburys do not contend that the operation of a stone quarry may not, under proper circumstances, be conducted so as not to constitute a nuisance. Rather, they argue that the record in the instant case discloses that the particular manner in which Gaylord proposes to operate the quarry will substantially interfere with the enjoyment of their property.

Where an individual proposes to engage in what is otherwise a lawful venture, the presumption is that he will conduct his activities in a proper manner. *Pope v. Clark,* 122 Md. 1, 11, 89 A. 387 (1913); *Davis v. Balt. & Ohio R. Co.,* 102 Md. 371, 377, 62 A. 572 (1905). Thus, a court will not act, in anticipation of a threatened nuisance, to enjoin a legitimate activity unless the circumstances *plainly* show that the activity will be conducted as a nuisance. As stated in *Adams*

*v. Michael, supra,* 38 Md. at 129, relied upon by the Court of Special Appeals in this case:

"The granting of injunctions on applications of this character involves the exercise of a most delicate power, and the court is always reluctant to act except in cases where the right is clear and unquestioned, and the facts show an urgent necessity. *The general rule is, that an injunction will only be granted to restrain an actual existing nuisance; but where it can be plainly seen that acts which, when completed, will certainly constitute or result in a grievous nuisance,* or where a party threatens, or begins to do, or insists upon his right to do certain acts, the court will interfere, though no nuisance may have been actually committed, if the circumstances of the case enable the court to form an opinion as to the illegality of the acts complained of, and the irreparable injury which will ensue." (Emphasis supplied.)

*City of Bowie v. County Comm'rs,* 260 Md. 116, 126-127, 271 A. 2d 657 (1970); *Sullivan v. Northwest Garage, Inc.,* 223 Md. 544, 552, 165 A. 2d 881 (1960); *Hamilton Corporation v. Julian,* 130 Md. 597, 600-601, 101 A. 558 (1917).

As the Court of Special Appeals concluded in this case, the record "falls far short" of the required showing. At trial both parties relied on expert testimony in support of their respective positions. Witnesses for the Leatherburys testified that the quarry operation, as proposed, would be insufficient to control red clay dust produced, and that the dust fallout would pollute the surrounding area, killing vegetation and fish. The Leatherburys also attempted to prove by an expert witness that excessive noise would be created by the machinery and blasting operations, although the witness stated that he did not know of any federal, state or local regulations that would be violated. In response, expert witnesses for Gaylord testified that the dust control equipment would be sufficient to control air pollution, and that the noise engendered by the quarrying would not be productive of physical discomfort.

In light of the conflicting expert testimony, we believe that the chancellor had a sufficient basis for finding that the Leatherburys failed to establish with reasonable certainty that a nuisance will result. Since this action "has been tried by the lower court without a jury . . . the judgment of the lower court will not be set aside on the evidence unless clearly erroneous and due regard will be given to the opportunity of the lower court to judge the credibility of witnesses." Maryland Rule 886. Our holding that the chancellor could properly conclude that the present action is premature, however, is without prejudice to any future action by the Leatherburys after the quarry is in operation.

The Leatherburys also charge that "[t]he chancellor erred in not balancing environmental costs against economic considerations." Their argument is based on the declaration of policy section set forth in the Maryland Environmental Policy Act, Code (1974), § 1-302 of the Natural Resources Article, which provides in pertinent part:

> "(d) Each person has a fundamental and inalienable right to a healthful environment, and each person has a responsibility to contribute to the protection, preservation, and enhancement of the environment;

> * * *

> "(f) The determination of an optimum balance between economic development and environmental quality requires the most thoughtful consideration of ecological, economic, developmental, recreational, historic, architectural, aesthetic, and other values . . . ."

The law of nuisance itself involves a determination as to the environmental impact of a challenged activity. As stated long ago by the Court in *Adams v. Michael, supra,* 38 Md. at 126:

> "Now, it is certainly true that the owners or occupiers of dwelling-houses, whether in the city or country, have the right to enjoy pure and

> wholesome air, that is, as pure and wholesome as their local situation can reasonably supply; and any act which materially corrupts or pollutes the air, done without authority or justification, is strictly a nuisance."

However, the Leatherburys contend that the Maryland Environmental Policy Act "represent[s], in part, a broadening of the protection of the rights of an individual already existing in the Maryland law of nuisance." Additionally, they argue that "the policy statements of . . . [§ 1-302] of the Maryland Environmental Policy Act go beyond the . . . nuisance concept of specific damage by the Appellee to the Appellant and charges the Appellee with the responsibility of preserving the whole environment." The trial judge, it is contended, failed to comply with the Act by not determining an optimum balance between Gaylord's proposed economic development and the environmental quality of the area.

The Maryland Environmental Policy Act consists of §§ 1-301 through 1-305 of the Natural Resources Article. Sections 1-301 and 1-305 merely define terms used in the Act and set forth the name of the Act. Section 1-302, upon which the Leatherburys rely, consists of a declaration of policy, and is merely prefatory to the operative portion of the Act, §§ 1-303 and 1-304. These two sections impose certain responsibilities and duties only upon state agencies. For example, the agencies must undertake studies "to develop and describe appropriate alternatives to present policies, programs, and procedures that involve significant adverse environmental effects or unresolved conflicts concerning uses of available resources." § 1-303 (2). Additionally, state agencies must prepare reports on the environmental effects of proposed state action which would significantly affect the quality of the environment. § 1-304.

As is shown by the language of the Act, the goals and purposes set forth in the policy declaration section were intended by the Legislature to be accomplished by state agencies. Nothing in the Act supports the Leatherburys' view that either new or enlarged rights were intended to be

created in an action to enjoin a prospective nuisance by a neighboring landowner, nor does the Act purport to enact new criteria for a trial court to use in determining whether a future activity will constitute a nuisance. While actions taken by state agencies pursuant to their duties under the Act may be relevant evidence on the issue of whether a particular activity constitutes a nuisance, the Act does not change the requirements for adjudicating a private action to obtain an anticipatory injunction in a case such as this.

> *In No. 189, judgment of the Circuit Court for Garrett County affirmed.*
>
> *Appellants to pay costs.*
>
> *In No. 26, judgment of the Court of Special Appeals affirmed.*
>
> *Petitioners to pay costs.*