ROBERT H. CAMPBELL ET UX. *v.* THE MAYOR AND
ALDERMEN OF THE CITY OF ANNAPOLIS

[No. 474, September Term, 1979.]

*Decided January 10, 1980.*

The cause was argued before LOWE, MASON and LISS, JJ.

*Theodore G. Bloom,* with whom were *Goodman, Bloom &
Cohen, P.A.* on the brief, for appellants.

*Richard G. Anderson* and *Richard T. Wright, Assistant City
Attorneys,* with whom was *Eugene M. Lerner, City Attorney,*
on the brief, for appellee.

LISS, J., delivered the opinion of the Court.

We have found that when individuals speak of principles they usually mean that they object to the application of rules connected with certain systems. The objections, though frequently involving matters of minimal financial importance, nevertheless require the expenditure of large sums of money and the investment of great amounts of time on the part of the litigants and the judicial system. Unfortunately, such actions accomplish very little other than the derived satisfaction of one's "standing up for a principle."

In this case the appellee, Mayor and Aldermen of the City of Annapolis (hereinafter, the City) brought this action against the appellants, Robert H. Campbell and Annie Jane Campbell (hereinafter, the Campbells) for injunctive and other relief to enforce the provisions of Chapter 12 of the Annapolis City Code which required owners and operators of residential rental properties within the City to obtain and maintain operating licenses and to pay a prescribed fee for such licenses. The Campbells contended that the requirement for the payment of such licenses was unconstitutional and invalid. The case was submitted to the trial court on a set of stipulated facts agreed upon by the parties. The chancellor below held that the licensing provisions of the City Code were valid and signed a decree requiring the Campbells to apply for and obtain licenses for the rental units in Annapolis owned by them, and otherwise to comply with the provisions of Section 12-16 of the City Code. He further enjoined the Campbells to allow the City's agents access to the rental properties for the purpose of inspecting them under Section 12-9 of the City Code. This appeal is from that decree.

The questions presented are stated as follows by the appellants:

1. Does Article XI-E, Section 5 of the Maryland Constitution prohibit the City of Annapolis from imposing, levying and collecting a license fee for the issuance of a required license to operate residential rental units, where the ordinance establishing such license requirements and the imposition of a license fee to obtain the same was enacted

subsequent to January 1, 1954, and the General Assembly has not expressly authorized municipalities to levy or impose such type of license fee?

2. Was it proper for the lower court to enjoin the appellants to comply with Section 12-9 of the Annapolis City Code when the validity of that section was not an issue before the lower court and the appellants had never refused to comply with that section?

The parties entered into a stipulation that there were no disputed issues of fact between them, and that the controversy was to be submitted to the chancellor upon a bill and answer together with the stipulation for determination as a matter of law as to the validity of Section 12-16 of the Code of the City of Annapolis.

The stipulated facts were as follows:

"The Plaintiff, The Mayor and Aldermen of The City of Annapolis, is a municipal corporation of the State of Maryland, and, as such, is governed by the provisions of Article XI-E of the Constitution of the State of Maryland, Article 23A of the Annotated Code of Maryland, and the Charter of The City of Annapolis.

Chapter 12 of the Code of The City of Annapolis, entitled 'HOUSING AND PROPERTY MAINTENANCE STANDARDS' a copy of which is attached hereto, and is made a part of this Stipulation, has been duly adopted and enacted by the Plaintiff.

Section 29 of the Charter of The City of Annapolis, a copy of which is attached hereto, and is made a part of this Stipulation, has been duly adopted and enacted by the Plaintiffs.

The Defendants, Robert H. Campbell and Annie Jane Campbell, are the owners and operators of residential rental dwelling units located at the premises known as 119 Prince George Street, 126 Prince George Street, and 25 East Street, all located within the City of Annapolis.

Despite notice from authorized representatives of the City to do so, and despite the provisions of Section 12-16 of the Code of the City of Annapolis, as aforesaid, the Defendants have refused, and are continuing to refuse, to apply for and obtain a license to operate a residential rental dwelling unit or units at the properties known as 119 Prince George Street, 126 Prince George Street, and 25 East Street, in the City of Annapolis, respectively on the claimed ground that such a license entails payment of a license fee which is unconstitutional, unlawful and invalidly imposed.

Notices of non-compliance with the provisions of Section 12-16 of the Code of the City of Annapolis, as aforesaid, were received by the Defendant, Robert H. Campbell on or about March 19, 1978 with respect to the property known as 25 East Street and on or about June 13, 1978 with respect to the property known as 119 Prince George Street.

The Defendants have not challenged and in these proceedings do not challenge the validity of any sections or provisions of Chapter 12, entitled 'HOUSING AND PROPERTY MAINTENANCE STANDARDS' of the Code of the City of Annapolis, or any rights of inspection under that Chapter of the City Code, except Section 12-16 thereof.''

The stipulation further recited:

"The Defendants have challenged and in these proceedings are challenging the validity of Section 12-16 of Chapter 12 of the Code of the City of Annapolis, pertaining to *Licensing of operation of certain dwellings and rooming houses.'* The Defendants assert that said provisions are invalid on the following grounds:

A. Said provisions are contrary to the Fourteenth Amendment to the Constitution of the United States in that they constitute a denial of the equal protection of the law, since they apply only

to certain types of habitation within the limits of the City of Annapolis and not equally to all types of habitation; and there is no reasonable basis for such discrimination between owners of one type of residential property and owners of other types of residential property.

B. Said provisions were enacted without any authority for the same in the Charter of the City of Annapolis.

C. Said provisions were enacted contrary to Article XI-E, Section 5 of the Constitution of the State of Maryland, in that said section requires owners of rental properties to apply for and obtain a license and to pay a license fee or tax, which provisions were not in effect on or prior to January 1, 1954.

The provisions of Section 12-16 of the Code of the City of Annapolis were enacted subsequent to January 1, 1954.

Section 29 of the Charter of the City of Annapolis was in effect prior to January 1, 1954." [End of stipulation.]

Article 23A, Section 2 of the Annotated Code of Maryland (1957, 1973 Repl. Vol.), provides in pertinent part that:

The legislative body of every incorporated municipality in this State, except Baltimore City, . . . shall have general power to pass such ordinances not contrary to the public general or public local laws and the Constitution of Maryland as they may deem necessary in order to assure the good government of the municipality, to protect and preserve the municipality's rights, property, and privileges, to preserve peace and good order, to secure persons and property from danger and destruction, and to protect the health, comfort and convenience of the citizens of the municipality. . . .

Article 23B, Section 22(1) enumerates the powers of the council as follows:

> *General powers.* — The council shall have the power to pass all such ordinances not contrary to the Constitution and laws of the State of Maryland or this charter as it may deem necessary for the good government of the town; for the protection and preservation of the town's property, rights and privileges; for the preservation of peace and good order; for securing persons and property from violence, danger, or destruction; and for the protection and promotion of the health, safety, comfort, convenience, welfare, and happiness of the residents of and visitors in the town.

Pursuant to the exercise of the police power contained in the above sections, the Mayor and Aldermen of the City of Annapolis adopted Section 12-9 of the Code of the City of Annapolis. That section grants to the city engineer and city health officer the power to make inspections of dwellings and rooming units located in the city in order to determine whether the conditions of the units comply with the provisions of the building and health laws of the city. The owners of such units are required to grant to the city's representatives free access to the premises at reasonable times for the purposes of inspection.

Section 12-16 (a) of the Code of the City of Annapolis provides, in pertinent part, that "[n]o person shall operate a single rental unit, multiple dwelling or rooming house unless he holds a current unrevoked operating license . . . approved by the city engineer with the concurrence of health officer." The city clerk is authorized to issue the original licenses and renewals thereof provided the units are found after inspection to meet the requirements of the City Code. We come now to the tremendous matter of principle which is the bone of contention in this case. Section 12-16 (f) provides that "[t]he operating license fee shall be ten dollars ($10.00) annually per dwelling unit which shall be payable in advance of the issuance of the license or renewal."

As we understand appellants' contentions in this case, they do not question that under Chapter 29 of the Charter of the City of Annapolis, the City is required to protect the health, safety and welfare of its citizens, nor do they have any quarrel with the City's contention that under Article 23A of the Annotated Code of Maryland, the City is granted certain broad police powers to effectuate its obligation. What the appellants do place their reliance upon in this case is the language contained in Article XI-E, Section 5 of the Constitution of Maryland which the City acknowledges to be the governing law. That section provides, in pertinent part:

> Notwithstanding any other provision in this Article, the General Assembly may enact, amend, or repeal local laws placing a maximum limit on the rate of which property taxes may be imposed by any such municipal corporation and regulating the maximum amount of debt which may be incurred by any municipal corporation. However, no such local law shall become effective in regard to a municipal corporation until and unless it shall have been approved at a regular or special municipal election by a majority of the voters of that municipal corporation voting on the question. No such municipal corporation shall levy any type of tax, license fee, franchise tax or fee which was not in effect in such municipal corporation on January 1, 1954, unless it shall receive the express authorization of the General Assembly for such purpose, by a general law which in its terms and its effect applies alike to all municipal corporations in one or more of the classes provided for in Section 2 of this article.

Appellants argue strenuously that Section 12-16 of the Code is unconstitutional because that section requires a license to operate residential rental units and provides for the exacting of a fee for the issuance of that license despite the fact that the license fee was not in effect on January 1, 1954 in derogation of Article XI-E, Section 5 of the Constitution of

Maryland. The appellants also contend that the fee is of the type which the General Assembly has never granted the express authority to the City to impose, exact or levy. Appellants read Section 5 of Article XI-E of the Constitution as precluding any Maryland municipal corporation from exacting any new license fee requirements subsequent to January 1, 1954 without the express authorization of the General Assembly regardless whether the license fees are enacted as regulatory measures or for revenue purposes. We reject this position as being inconsistent with the intent of Article XI-E.

It is axiomatic that in interpreting a constitutional provision, the section should be construed as a whole, and the intention of the constitutional section is to be gathered from the entire section rather than from any one sentence or part thereof. Moreover, where a general constitutional scheme is framed which embraces a number of constitutional sections, the various sections should be read to harmonize with each other so that each is given effect. *See Woelfel v. Mayor and Aldermen of Annapolis,* 209 Md. 314, 121 A.2d 235 (1956) (construing Section 5 of Article XI-E of the Maryland Constitution in light of Section 3 of that Article). Literalism and verbalism must yield to the overall intentions of the framers of the Constitution. *County Commissioners for Montgomery County v. Supervisors of Elections,* 192 Md. 196, 63 A.2d 735 (1949); *Blondes v. State,* 16 Md. App. 165, 294 A.2d 661 (1972).

The intent of Article XI-E was specifically to grant to Maryland municipalities the power to control their own local affairs, and was designed to permit local legislation to be enacted solely by those directly affected without interference by representatives from other sections of the State. *See Montgomery Citizens League v. Greenhalgh,* 253 Md. 151, 252 A.2d 242 (1969) (*county* home rule powers under Article XI-A). One of the objectives of "home rule" was to assure Maryland municipalities the power of self government and freedom from interference by the legislature in the exercise of that power. *See City of Baltimore v. Sitnick & Firey,* 254 Md. 303, 255 A.2d 376 (1969).

Appellees contend that the Court of Appeals has long recognized the exercise of reasonable police power regulation of housing accommodations as a valid exercise of the powers granted to municipalities under Section 3 of Article XI-E. In *McBriety v. City of Baltimore,* 219 Md. 223, 232-33, 148 A.2d 408, 414 (1959), the Court of Appeals said in discussing a Baltimore City ordinance similar to the one here in question: "We think it is clear that the operation of the business of renting or leasing housing accommodations has a direct relationship to the public interests in the City of Baltimore and that the regulation thereof afforded by the ordinance is not only reasonable but is salutary." *Accord County Council of Montgomery County v. Investors Funding Corp.,* 270 Md. 403, 312 A.2d 225 (1973).[1]

The Court of Appeals has also recognized the imposition of license fees as a valid regulatory measure enacted pursuant to municipal police powers. As it declared in *Maryland Theatrical Corporation v. Brennan,* 180 Md. 377, 24 A.2d 911 (1942):

> There is no doubt that the Legislature, or a municipality duly authorized by the Legislature, may impose license taxes upon businesses, occupations or amusements, either for regulatory purposes, under the police power, or for revenue purposes, under the taxing power. [Citations omitted.]
>
> The question whether a particular Act is primarily a revenue measure or a regulatory measure is important, because different rules of construction apply. A regulatory measure may produce revenue, but in such a case the amount must be reasonable and have some definite relation to the purpose of the Act. A revenue measure, on the other hand, may also provide for regulation, but if the raising of revenue is the primary purpose, the amount of the tax is not

---

1. While McBriety v. City of Baltimore, *supra,* and County Council of Montgomery County v. Investors Funding Corp., *supra,* relate to the "home rule" powers granted by Article XI-A, we think the principles there stated apply equally to Article XI-E, which is here involved.

reviewable by the courts. There is no set rule by which it can be determined in which category a particular Act primarily belongs. In general, it may be said that when it appears from the Act itself that revenue is its main objective, and the amount of the. tax supports that theory, the enactment is a revenue measure. "In general, * * * where the fee is imposed for the purpose of regulation, and the statute requires compliance with certain conditions in addition to the payment of the prescribed sum, such sum is a license proper, imposed by virtue of the police power; but where it is exacted solely for revenue purposes and its payment give the right to carry on the business without any further conditions, it is a tax." [Citation omitted.] [180 Md. at 380-82.]

In the light of the application and inspection requirements of City Code, Section 12-16, the license fee imposed by this ordinance was, we conclude, enacted for regulatory purposes pursuant to the City's home rule powers under Article 23A of the Maryland Code and Article XI-E, Section 3 of the Maryland Constitution.

Appellants argue that the language of Section 5 of Article XI-E, which prohibits the adoption of new municipal license fees after January 1, 1954, applies whether the fees are enacted for regulatory or revenue purposes. We do not agree.

The Court of Appeals has had only one occasion to directly address the construction of Article XI-E, Section 5. In that case, *Woelfel v. Mayor and Aldermen of Annapolis, supra,* the construction of the specific sentence here under consideration was not at issue, but the Court of Appeals clearly indicated that in construing Section 5, it must be read in a manner as consistent as possible with the "home rule" powers granted in Article XI-E, Section 3. The Court made it clear that the purpose of Section 5 was to allow the state government to *permissively* maintain a presence in the *revenue* operations of its municipalities. At no point is there even a suggestion that the purpose of Section 5 involves the reservation by the state government of a right to maintain a presence in the local

*regulatory* operations of its municipalities. *See* Sobeloff Commission On Administrative Organization Of The State, Second Report at 4 (June, 1952).

Although the third sentence of Section 5 of Article XI-E was not included in the text of the constitutional amendment initially recommended by the Sobeloff Commission, the additional language of this sentence added by the General Assembly before the submission of Article XI-E to the electorate was not inconsistent with the recommendations of the Sobeloff Commission. *See* Code (1957, 1973 Repl. Vol.) Art. 23B, Sec. 22 (33) (wherein the model municipal charter enacted by the General Assembly noted, as a guide to municipalities in the exercise of their rights under Section 3 of Article XI-E, that a municipality could "license and regulate any business [or] occupation, . . . [and] establish and collect fees and charges for all licenses and permits issued. . . .").

In *Hitchins v. Mayor & City Council,* 208 Md. 134, 140-41, 117 A.2d 854, 856 (1955), the Court of Appeals described Section 5 of Article XI-E as dealing only "with limitations upon rates of *municipal taxation* of property, upon sources of *municipal taxation* and upon the amount of *municipal debt* and reserves powers to the General Assembly with regard to *such matters. . . .*" (Emphasis added.) This intention of the Legislature is further indicated by the title designating Section 5 as concerning "Taxation; debt limitations."

The authority of the City of Annapolis to require licenses to be obtained where necessary for regulatory purposes in the interest of the public health, safety or morals is not seriously questioned by appellants. Nor is there any real dispute that the power to regulate carries with it the implied power to impose a charge to defray the costs of regulation. Rather, appellant asserts that after January 1, 1954, in the absence of express authorization by the General Assembly, the City of Annapolis had no power to impose those costs of regulation on landlords who are required to obtain a license and to pay a license fee by Section 12-16. We do not agree. We conclude that the City of Annapolis was expressly granted the power to license under its police powers and that that necessarily

implied the power to impose a license fee or tax. 9 E. McQuillin, Municipal Corporations Section 26.28 n. 1 (3d ed. 1978).

We observe no constitutional impediment which would require the costs of regulation of this exercise of the police power of the City to be imposed on the general taxpayer. For the reasons we have indicated, we shall affirm the chancellor's finding as to the right of the City of Annapolis to require appellants to secure the license required by Section 12-16 and to pay the fees there designated.

There remains one other issue to be determined in this appeal. The chancellor included in the decree signed by him language which "Ordered and Decreed that the said defendants (appellants) be and hereby are, enjoined to allow the City of Annapolis and its duly authorized agents and employees reasonable access to the said rental dwelling units for the purpose of performing the inspections required under the provisions of Section 12-9 of the Code of the City of Annapolis." Appellants complain with justification, we believe, that this portion of the decree was not adequately warranted by the record in this case. There was nothing in either the pleadings or stipulations from which the chancellor could have concluded that there had been any request by the City for inspections under Section 12-9 or that the appellants had refused or would refuse such a request. The stipulations clearly stated that the only portion of the City's Housing and Property Maintenance Code disputed by the appellants was the licensing provisions of Section 12-16, and the only issue raised for determination was the validity of that section.

We agree with appellants' argument that injunction is an extraordinary remedy and should be granted only to prevent irreparable harm or the threat thereof. It should never be issued without cause nor should it be issued to enforce compliance with an ordinance where no refusal to comply has been made by the party enjoined. The Court of Appeals said in *Whalen v. Dalashmutt,* 59 Md. 250, 252 (1883):

> [I]t is a well settled principle in the practice of injunction, that where a defendant asserts positively that it is not his intention to do a certain act, or to

violate any particular right asserted by the plaintiff, and there be no evidence to show to the contrary, the Court will not interfere by injunction. It will neither grant nor continue an injunction in the face of such disclaimer.

*See also Leatherbury v. Peters,* 24 Md. App. 410, 332 A.2d 41, *aff'd,* 276 Md. 367, 347 A.2d 826 (1975).

Under the circumstances as evidenced by the record in this case, we conclude the chancellor was in error when he found that the appellants had refused to comply with Section 12-9 and enjoined them to do so. The portion of the decree which relates to that matter should be stricken from the decree.

*Decree affirmed in part, reversed in part, remanded to trial court for entry of decree consistent with this opinion; costs to be divided.*