*Linda Turner v. Maryland Department of Health*
No. 2304, Sept. Term, 2018
Opinion by Leahy, J.

**Administrative Law > Standing > Judicial Review**

A proper party in an administrative action may not have standing to file a petition for judicial review in the circuit court. *See Sugarloaf Citizens' Ass'n v. Dep't of Env't*, 344 Md. 271, 285-86 (1996) ("[A] person may properly be a party at an agency hearing under Maryland's 'relatively lenient standards' for administrative standing but may not have standing in court to challenge an adverse agency decision."). And certainly, a person or entity deemed not a proper party in an administrative action does not have standing to file a petition for judicial review. *See Montgomery Cty. v. One Park N. Assocs.*, 275 Md. 193, 201-02 (1975) (explaining that Montgomery County was not entitled to judicial review of an agency's decision because, although it may have been "aggrieved" by the agency's order, it was not a party to the administrative proceedings and, therefore, was not a "party aggrieved" under the APA).

**Administrative Law > Standing > Judicial Review**

Nursing Home Facility's "Medicaid Authorized Representative" Order was not valid to confer standing to petition for judicial review from the agency's denial of deceased patient's application for long-term care Medical Assistance ("Medicaid benefits") where Nursing Home was never appointed, or applied to be appointed, the personal representative of the deceased's estate.

**Health—General > Medical Assistance Program > Authorized Representative**

42 C.F.R. § 435.923 allows an applicant to personally designate an authorized representative. 42 C.F.R. § 435.923(a)(1); COMAR 10.01.04.12 B(2)(a). The applicant must express her authorization by transmitting her signature through one of the manners specified in paragraph (f) of 42 C.F.R. § 435.923. Any valid designation of an authorized representative that does not require the signature of the applicant must be accorded under state law pursuant to C.F.R. § 435.923(a)(2).

**Health—General > Medical Assistance Program > Authorized Representative**

As expressly provided in COMAR 10.01.04.12B(3)(d), only a "personal representative of the applicant or recipient's estate . . . or a person who has in good faith filed an application to be appointed the personal representative" may have the requisite "proof of legal authority," 10.01.04.12B(2)(b) to serve as the authorized representative of the decedent in this case.

Circuit Court for Howard County
Case No. 13-C-18-114673

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 2304

September Term, 2018

_____

LINDA TURNER

v.

MARYLAND DEPARTMENT OF HEALTH

_____

Graeff,
Leahy,
Shaw Geter,

JJ.

_____

Opinion by Leahy, J.

_____

Filed: April 2, 2020

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

This appeal involves a nursing facility's effort to receive payment from the Maryland Medical Assistance Program, commonly referred to as the Medicaid program,[1] for services the facility rendered to its deceased patient. We are asked to consider whether the nursing facility had standing, as the deceased's purported "Medicaid Authorized Representative," to pursue an administrative appeal and subsequent petition for judicial review from the denial of long-term care Medical Assistance ("Medicaid benefits").

Linda Turner was a resident at Ridge Leasing, LLC (the "Facility"),[2] a long-term care nursing facility, until her death. She required twenty-four-hour care due to various ailments and had limited assets to pay for her care. Consequently, Ms. Turner submitted an application for Medicaid benefits to the Howard County Department of Social Services (the "Local Department") to pay for her care at the Facility. After the first application was denied, she submitted another. Just before the second application was denied, she passed away. The Facility petitioned the Circuit Court for Howard County for appointment as the "Medicaid Authorized Representative" on behalf of the deceased Ms. Turner. The court granted the Facility's motion and issued an "Order Appointing Authorized Medicaid Representative" ("MAR Order").

---

[1] The Maryland Department of Health administers the Medical Assistance Program and, pursuant to Maryland Code (1993, 2019 Repl. Vol.), Health—General Article ("HG"), § 15-103, "has a statutory responsibility to adopt rules and regulations for the reimbursement of providers under the Program." *Dep't of Health & Mental Hygiene v. Riverview Nursing Ctr., Inc.*, 104 Md. App. 593, 598 (1995).

[2] The Facility defines the appellant in this case as "Linda Turner; by Authorized Representative Ridge Leasing, LLC." Because we hold that the Facility did not have standing to represent Ms. Turner's estate in the underlying proceedings, we will refer to Ms. Turner and the Facility separately.

Forearmed with the MAR Order, the Facility appealed the denial of Medicaid benefits before the Office of Administrative Hearings ("OAH"). The OAH denied the Medicaid benefits, and the Facility filed a petition for judicial review in the circuit court. The Maryland Department of Health ("MDH"), appellee, intervened and moved to dismiss the Facility's petition because the Facility had not filed to become the personal representative of Ms. Turner's estate and, correspondingly, lacked standing. The circuit court agreed with MDH and dismissed the Facility's petition. The Facility filed a timely appeal and presents one question for our review, which we have slightly rephrased: Did the circuit court err in finding that the Facility lacked standing to pursue an administrative appeal from the denial of Ms. Turner's Medicaid benefits?

After resolving that the issue of standing was not waived by failing to raise it before the OAH, we conclude that the Facility did not have authority under Maryland law to act on Ms. Turner's behalf after her death without first filing to become the personal representative of her estate. Accordingly, we affirm the circuit court's decision to dismiss the case because the Facility lacked standing to petition for judicial review of the administrative decision denying Medicaid benefits.

## BACKGROUND

Sadly, Ms. Turner was admitted to the Facility on January 13, 2016 and remained there until she died 21 months later. She required twenty-four-hour care because she was suffering from a variety of mental and physical ailments, including breast cancer, memory loss, obesity, schizophrenia, and anxiety disorder. Initially, due to her memory loss, Ms.

Turner was unable to access any of her assets or offer any information regarding their value. She sought assistance through the Medicaid program.

## Medical Assistance Applications

Ms. Turner, with the Facility's assistance, submitted two applications for Medicaid benefits to the Local Department.[3] Ms. Turner's first application was denied because she did not submit documents requested by the Local Department to verify her eligibility for Medicaid benefits.

On March 8, 2016, the Facility petitioned the Circuit Court for Howard County to appoint guardians of Ms. Turner's person and property to manage Ms. Turner's affairs and to assist her in obtaining documentation necessary to support her application for Medicaid benefits. The guardianship petition represented that Ms. Turner was widowed with one adult daughter but did not provide Ms. Turner's preadmission address or the name or contact information for her daughter. The petition further averred that, because Ms. Turner suffered from schizophrenia and cognitive impairment, she required assistance to research, secure, and manage her assets and income. The circuit court granted the petition and appointed guardians for Ms. Turner's person and property on July 7, 2016.

Ms. Turner filed a second application for Medicaid benefits on August 19, 2016 and submitted documentation reporting total assets of $5,147.00. The Local Department

---

[3] Ms. Turner applied for long-term care coverage under the Maryland Medical Assistance Program, administered by the State to provide "comprehensive medical and other health related care for eligible categorically and medically needy persons." Code of Maryland Regulations ("COMAR") 10.09.24.02.

denied the second application on October 28, 2016 because Ms. Turner's assets exceeded the resource limit of $2,500.00 for benefit eligibility.[4]

Ms. Turner died on October 18, 2016. The circuit court entered an order terminating the guardianship of Ms. Turner's person on December 5, 2016, and another order terminating the guardianship of property on June 28, 2017.

### Petition for Appointment of Medicaid Authorized Representative

Approximately ten months following Ms. Turner's death, on August 23, 2017, the Facility filed a "Petition for Appointment of Authorized Medicaid Representative" ("MAR Petition") in the Circuit Court for Howard County. The petition stated that "there are no persons acting on behalf of Ms. Turner to pursue appeal" of the "erroneous determination" by the Local Department denying Medicaid benefits, and that the Facility would be "unable to pursue an appeal for Ms. Turner unless it is appointed as the Medicaid Authorized Representative for Ms. Turner." With the exception of an "adult daughter whose identity and whereabouts remain[ed] unknown," the Facility was "unaware of any other relatives of Ms. Turner who [were] willing to provide assistance with regard[] to her application for Medicaid benefits."

---

[4] According to COMAR 10.09.24.08M, the "Medically Needy Resource Standard" for one individual is $2,500.00. An applicant is "ineligible for any month in which countable resources exceed the applicable standard[.]" COMAR 10.09.24.08L. Because Ms. Turner maintained cash assets in excess of $2,500.00 throughout the time-period at issue, she was ineligible for Medicaid assistance. To be considered eligible for Medicaid assistance, it is not relevant whether the applicant has more debts than resources. Ms. Turner had outstanding debts, including over $65,000.00 that she owed the Facility at the time of her death. Payments could have been, but were not, made to the Facility and other debtors during the months at issue so that Ms. Turner could qualify for Medicaid assistance.

4

The petition further averred that Maryland law, specifically Code of Maryland Regulations ("COMAR") 10.01.04.12, "permits an individual or organization with a direct financial interest to act in good faith as a designated Medicaid representative for incapacitated individuals if no other individual or organization is willing and able to act on the applicant or recipient's behalf." The Facility represented that it did "not anticipate any objections to the relief requested" and that there are "no known interested parties on which to serve notice." MDH was not served a copy of the MAR Petition.

The circuit court granted the MAR Petition and issued the Facility's proposed MAR Order on September 1, 2017. Notwithstanding that Ms. Turner had already passed away, the MAR Order authorized the Facility to "take such actions as are necessary to qualify [Ms. Turner] for Medicaid benefits available to her including:"

a. taking such actions as are necessary to pursue eligibility of Medicaid benefits for her through administrative or legal causes of action;

b. spending down of assets payable to [the Facility] as are necessary to qualify Linda Turner for Medicaid, and [sic]

c. obtaining financial records including, but not limited to, bank statements and records regarding any and all accounts associated with Ms. Turner or held in her name, life insurance documentation, documentation pertaining to any and all assets, income and/or resources held by Ms. Turner or for Ms. Turner's benefit as required by the Maryland Medical Assistance Program in order to process Ms. Turner's application. [sic]

d. pursue any rights on behalf of Ms. Turner that are afforded by law or statute or regulation to an individual seeking Medicaid benefits to appeal a denial(s), past or future, of Medicaid benefits, past or future, previously issued or issued in the future, or inaction by any State agency with respect to the application for Medicaid benefits on behalf of Linda Turner; and

e. retain counsel to assist in obtaining Medicaid benefits[.]

5

## Appeal to OAH

The Facility appealed the denial of Medicaid benefits before the OAH in a letter dated October 2, 2017.[5] A hearing was held before an administrative law judge ("ALJ") on January 9, 2018. In a written decision, dated February 23, 2018, the ALJ affirmed the decision of the Local Department and concluded "as a matter of law that the Local Department properly determined that [Ms. Turner] was ineligible for [Medicaid] benefits for the months of February 2016 through July 2016 due to being over the resource limit for benefits eligibility."

## Petition for Judicial Review of Administrative Decision

Within 30 days of the ALJ's decision, the Facility, as Ms. Turner's "authorized representative" under the MAR Order, filed a petition for judicial review in the Circuit Court for Howard County on March 26, 2018.[6] The Facility claimed the "Department of

---

[5] The letter noted an appeal and request for fair hearing to contest the Local Department's October 28, 2016 denial of the August 19, 2016 application. An applicant who has been denied eligibility for benefits is entitled to a fair hearing before an ALJ under COMAR 10.01.04.02. The ALJ did not address whether the fair hearing appeal was filed timely, nor shall we.

[6] The final decision of the OAH in this case constitutes a final decision by MDH. *See* COMAR 10.09.24.02 and 13. Title 7, Chapter 200 of the Maryland Rules "govern[s] actions for judicial review of (1) an order or action of an administrative agency, where judicial review is authorized by statute[.]" Maryland Rule 7-201(a). Pursuant to Maryland Rule 7-203(a),

> a petition for judicial review [of an agency decision] shall be filed within 30 days after the latest of: (1) the date of the order or action of which review is sought; (2) the date the administrative agency sent notice of the order or action to the petitioner, if notice was required by law to be sent to the petitioner; or (3) the date the petitioner received notice of the agency's order or action, if notice was required by law to be received by the petitioner.

6

Health's decision via the [OAH]" denying Ms. Turner Medicaid benefits was "erroneous as a matter of law," because "Ms. Turner had no access to her resources due to the undisputed facts that the resources were unknown and Ms. Turner was incompetent. As such, the resources cannot be considered countable." This time, the Facility served a copy of its petition on MDH. MDH responded on April 27th by filing its intention to participate in the action. *See* Maryland Rule 7-204.

The Facility filed its Maryland Rule 7-207 memorandum on June 11th. The Facility challenged the ALJ's determination, upholding the Local Department's finding, that "funds in Ms. Turner's checking account were countable and available resources." The Facility noted that the ALJ erred by ruling on months that were specified in the first application, even though the appeal related to the second application. The Facility added a new argument: that the denial of benefits violated the federal Americans with Disabilities Act because Ms. Turner's disability rendered her unable to participate in the application process, and the Local Department penalized her "by denying Medicaid benefits for having assets which were unknown to her[.]"

A month later, MDH moved to dismiss the petition on the ground that the MAR Order did not grant standing to the Facility to petition for judicial review on Ms. Turner's behalf.[7] Specifically, MDH argued that the Facility was not an aggrieved party as required

_____

[7] On the same day, MDH also filed its response to the Facility's Rule 7-207 memorandum in which it argued, among other things, that the Facility's suggestion that "Ms. Turner's resources could not be considered available to her until they were 'discovered' by her guardian is not supported by applicable law." Additionally, MDH pointed out that even if the ALJ had considered the wrong application (which it did not concede), any failure to make a separate finding was of "no consequence" because "there

7

under the Maryland Administrative Procedure Act ("Maryland APA"), Maryland Code (1984, 2014 Repl. Vol., 2019 Supp.), State Government Article ("SG"), §§ 10-101 *et seq*. MDH further explained that according to COMAR 10.01.04.12B(3), "[f]ollowing the death of a Medicaid applicant or recipient, the applicant or recipient's appeal of a denial of benefits can only be pursued by a personal representative of an estate."

In its opposition to the motion to dismiss, the Facility assailed MDH's claim that only a personal representative of an applicant's estate may pursue an appeal of Medicaid benefits. Relying on 42 C.F.R. §§ 400.203 and 435.923, the Facility asserted that "[f]ederal regulation grants broad authority to authorized representatives, which survives death." Because the Facility was designated as an "authorized representative," the Facility argued that it should be "abundantly clear from the regulations" that the Facility's authority: "a) survives death, b) is only limited by the Medicaid applicant or beneficiary, and c) cannot be limited by or have special requirements added to it by the State." The Facility averred that to require it to file all necessary documents to open a creditor's estate to pursue Medicaid benefits would be unduly burdensome and was not required under federal regulations.

MDH countered that "federal law, []both expressly and implicitly recognizes that authorized representative status itself depends on state law." According to MDH, the

_____

is no evidence that Ms. Turner disposed of assets" which would result in her meeting the financial eligibility threshold. Finally, in response to the alleged ADA violation, MDH averred that the Facility made "no attempt whatsoever to show how acts or omissions by the [L]ocal [D]epartment amount to exclusion from participation in or denial of benefits or discrimination on the basis of disability in accordance with the elements of an ADA claim[.]"

8

federal regulation that controls this matter—42 C.F.R. § 435.923(a)(2)—expressly incorporates a representative's authority "accorded under state law."

At the hearing on the motion before the circuit court, counsel for MDH highlighted four main points in support of the motion to dismiss. First, that "COMAR 10.01.04.12 and specifically [subsection] B(3) identifies the individuals who have legal authority to appeal an eligibility determination," and "the only entity that is able to appeal an eligibility determination for a deceased person is the personal representative of the estate." Second, both a guardianship and a power of attorney terminate on the death of an individual. Third, § 7-401 of the Estates and Trusts Article allocates the ability to prosecute and defend litigation specifically to the personal representative of the estate. While "[n]othing would have prevented the [F]acility from becoming the personal representative," there was "no personal representative identified in this case." Fourth, SG § 10-222 provides that only an aggrieved party can pursue a petition for judicial review, and without the status as a personal representative, the Facility did not have standing because it was not an aggrieved party. MDH concluded by expressing the State's "strong interest in ensuring that these regulations are complied with and that there are protections built into the Estates and Trusts Article." Counsel noted that "the [F]acility claims those procedures are burdensome. . . . But those burdens are intended to protect the estate. And this is – this appeal is an effort to bypass those protections."

Counsel for the Facility pressed that because "Medicaid is a state implemented federal program," Maryland is violating the federal regulation by being "more restrictive

9

than the federal regulation," which only requires "a representative or person acting responsibly for the individual."

Ruling from the bench, the circuit court dismissed the Facility's petition for judicial review because the Facility was not an aggrieved party. The judge observed that "Maryland has created through COMAR 10.01.04.12 certain requirements on who can be an authorized Medicaid representative," and concluded that, in the case of a deceased individual, "Maryland requires there's only one way to do it and that's for the personal representative of the recipient's estate to make that application." The judge noted that the MAR Order was issued without MDH being served and having the opportunity to present its arguments on the law to the court.

The circuit court memorialized its ruling in a written order entered on August 27, 2018. Specifically, the order directed that "the petition for judicial review is DISMISSED because [the Facility] is not an aggrieved party," and directed the clerk to close the case. The Facility's timely appeal followed.

## DISCUSSION

### I.

### Standard of Review

Whether the circuit court erred when it granted MDH's motion to dismiss is a question of law, which we review de novo. *Greater Towson Council of Cmty. Ass'ns v. DMS Dev., LLC*, 234 Md. App. 388, 408 (2017).

In this case, the circuit court considered, among other things, the MAR Petition, the MAR Order, and the official public comments to 42 C.F.R. § 435.923. "When the circuit

10

court considers matters outside the pleadings, the court treats the matter as a motion for summary judgment[.]" *Comm. for Responsible Dev. on 25th St. v. Mayor & City Council of Baltimore*, 137 Md. App. 60, 73 (2001) (quoting *Boyd v. Hickman*, 114 Md. App. 108, 117-18 (1997), *cert. denied,* 346 Md. 26 (1997)). We review whether the court's decision was correct as a matter of law regardless of whether the court's order operated as a grant of a motion to dismiss or for summary judgment. *Greater Towson Council*, 234 Md. App. at 408.

## II.

## Motion to Dismiss Petition for Judicial Review

### A. Parties' Contentions

Before this Court, the Facility argues that the circuit court erred in dismissing the petition for judicial review on three grounds. First, the Facility contends that federal law allows for an authorized representative "to pursue an applicant's Medicaid rights once an applicant is deceased" under 42 C.F.R. §§ 400.203 and 435.923 without first becoming, or filing to become, the personal representative of the estate. Because the Facility obtained authorization from the circuit court to serve as Ms. Turner's authorized representative under the MAR Order, the Facility was able to pursue Ms. Turner's Medicaid benefits, even after she passed away. The "scope of authorization given to the Authorized Representative[] a) survives death, b) is only limited by the Medicaid applicant or beneficiary, and c) cannot be limited by or have special requirements added to it by the State."

11

Second, the Facility claims that Maryland law permits individuals other than personal representatives to pursue Medicaid benefits on behalf of deceased individuals. Specifically, the Facility states that (a) Maryland recognizes the appointment of a special administrator when necessary to protect property prior to the appointment and qualification of a personal representative, and (b) a circuit court has "full equity powers and jurisdiction" to "ensure that there is the ability to correct and supplement the law as needed."

During oral argument, the Facility clarified that it is not challenging the Maryland regulations for the designation of authorized representatives as conflicting with federal law, nor is it advancing any other preemption theory. Rather, the Facility contends that the circuit court erred in its interpretation of the applicable Maryland and federal laws.

Third, the Facility adds that the procedure by which the Facility obtained the MAR Order was "nearly identical to that of a special administrator and within the equity powers of the court."

MDH responds that Maryland law governing who is authorized to appeal the denial of a deceased person's Medicaid application is consistent with federal law. The applicable Maryland regulation, COMAR 10.01.04.12, complies with federal law because it permits an applicant to designate the personal representative as an authorized representative "at the time of application and at other times. And where such authority is 'accorded under state law,' such as in the appointment of a personal representative of an estate, [MDH] treats the state-law designation as a 'written designation' of authorized representative[.]" MDH insists that, under Maryland law, only the personal representative of an estate has standing to pursue judicial review of a deceased individual's denial of Medicaid benefits.

12

Accordingly, MDH avers that the "MAR Order is *ultra vires* and cannot provide a legal basis under which the nursing facility could have pursued the petition for judicial review in circuit court."

## B. Standing Requirements under the APA

MDH administrative hearings are governed by the provisions of the Maryland APA, which provides for the right to petition for review from a final administrative decision in the circuit court, and from there, the right to appeal to this Court.[8] *See* SG §§ 10-222 and 10-202, 203 (defining agencies subject to the Maryland APA and providing a list of agencies that are generally excluded from its provisions); COMAR 10.01.04.08C.(1). *See also Dep't of Health & Mental Hygiene v. Campbell*, 364 Md. 108, 117 (2001) (noting that review of final decisions by the Department of Health and Mental Hygiene [the former name of MDH], is subject to review under the APA). In order to petition for judicial review of an administrative decision under SG § 10-222, the "person or entity must both be a *party*

---

[8] We recently reinforced that this Court has no authority to exercise further review of an administrative agency's decision beyond the circuit court unless a statute expressly grants us that authority. *See Gray v. Fenton*, 245 Md. App. 207, 211-212, No. 3478, Sept. Term, 2018, slip op. at 4 (filed April 1, 2020) (citations omitted) (dismissing the appellant's appeal because the municipal code governing her administrative action did not provide for the right of review in this Court). We note, as we did in *Gray*, *id.* at 4, n. 2, that Maryland Code, Courts and Judicial Proceedings Article, § 12-302(a) (providing that right to appeal must be expressly provided by law) refers to "an appeal from a final judgment of a court entered or made in the exercise of *appellate jurisdiction*" (emphasis added). The Court of Appeals has explained, however, that this language refers to "an original circuit court action, authorized by statute, judicially reviewing an adjudicatory decision of an administrative agency or an adjudicatory decision of a local legislative body when it acts in a quasi-judicial capacity." *Prince George's Cty. v. Beretta U.S.A. Corp.* 358 Md. 166, 175 (2000) (citing *Gisriel v. Ocean City Bd. of Sup'rs of Elections*, 345 Md. 477, 486-96 (1997).

13

to the administrative proceedings *and* be *aggrieved* by the final decision of the agency."

*Sugarloaf Citizens' Ass'n v. Dep't of Env't*, 344 Md. 271, 287 (1996) (emphasis added);

SG § 10-222(a)(1) ("[A] *party* who is *aggrieved* by the final decision in a contested case

is entitled to judicial review of the decision as provided in this section.") (emphasis added).

Before a case reaches the circuit court, the threshold to establish party status before

an administrative agency is generally low. The Court of Appeals explained the rationale

of administrative standing in *Sugarloaf Citizens' Association v. Department of*

*Environment*:

> ***Absent a statute or a reasonable regulation specifying criteria for
> administrative standing,*** one may become a party to an administrative
> proceeding rather easily. In holding that a particular individual was properly
> a party at an administrative hearing, Judge J. Dudley Digges for the Court
> in *Morris v. Howard Res. & Dev. Corp.*, 278 Md. 417, 423 (1976), explained
> as follows:
>
>> He was present at the hearing before the Board, testified as a
>> witness and made statements or arguments as to why the
>> amendments to the zoning regulations should not be approved.
>> This is far greater participation than that previously determined
>> sufficient to establish one as a party before an administrative
>> agency. . . . Bearing in mind that the format for proceedings
>> before administrative agencies is intentionally designed to be
>> informal so as to encourage citizen participation, we think that
>> ***absent a reasonable agency or other regulation providing for
>> a more formal method of becoming a party***, anyone clearly
>> identifying himself to the agency for the record as having an
>> interest in the outcome of the matter being considered by that
>> agency, thereby becomes a party to the proceedings.

344 Md. 271, 286-87 (1996) (emphasis added), *superseded by statute*, 2009 Md. Laws Ch.

651 (H.B. 1569), *on other grounds, as recognized in Patuxent Riverkeeper v. Maryland*

*Dep't of Env't*, 422 Md. 294 (2011). While the requirements for administrative standing

14

are generally more lenient than the requirements for judicial standing, "this leniency only exists '[a]bsent a statute or a reasonable regulation specifying criteria for administrative standing[.]'" *Chesapeake Bay Found., Inc. v. DCW Dutchship Island, LLC*, 439 Md. 588, 599 (2014) (citing *Sugarloaf*, 344 Md. at 286). Our decisional law teaches that a proper party in an administrative action may not have standing to file a petition for judicial review in the circuit court.[9] And, a fortiori, a person or entity deemed not a proper party in an administrative action does not have standing to file a petition for judicial review.[10]

---

[9] The Court of Appeals explained in *Sugarloaf*:

> The cases in this Court, and the language of the Administrative Procedure Act itself, § 10–222(a)(1) of the State Government Article, recognize a distinction between standing to be a party to an administrative proceeding and standing to bring an action in court for judicial review of an administrative decision. Thus, a person may properly be a party at an agency hearing under Maryland's "relatively lenient standards" for administrative standing but may not have standing in court to challenge an adverse agency decision.

344 Md. at 285-86 (citation omitted); *see also Med. Waste Assocs., Inc. v. Maryland Waste Coal., Inc.*, 327 Md. 596, 611-14 (1992) (noting organization was a party at administrative proceeding but "did not have standing to remain a party in the judicial review actions"), *superseded by statute*, 2009 Md. Laws Ch. 651 (H.B. 1569), *on other grounds, as recognized in Patuxent Riverkeeper v. Maryland Dept. of Env't*, 422 Md. 294 (2011).

[10] To have standing to petition for judicial review, a person or entity must satisfy two conditions: (1) the person or entity must have been a party to the administrative proceedings; and (2) the party must be "aggrieved" by the decision of the agency. *Greater Towson Council*, 234 Md. App. at 409. An entity or person who was not a party to the proceedings before the administrative agency cannot be a "party aggrieved" by the agency's decision and, therefore, will not have standing to petition for judicial review. *See Montgomery Cty. v. One Park N. Assocs.*, 275 Md. 193, 201-02 (1975) (explaining that Montgomery County was not entitled to judicial review of an agency's decision because, although it may have been "aggrieved" by the agency's order, it was not a party to the administrative proceedings and, therefore, was not a "party aggrieved" under the APA).

## C. Waiver

At oral argument, in response to a question from this Court, counsel for the Facility argued, for the first time, that the Department had waived its standing argument by not raising it before the OAH. We conclude that, under prevailing law, the question of standing for judicial review cannot be waived by a failure to raise the issue before an administrative agency.

Standing to maintain judicial review of an administrative decision is a "matter to be resolved exclusively by the courts." *Sugarloaf*, 344 Md. at 291-92. In *Sugarloaf*, an ALJ appeared to render findings and conclusions on a party's entitlement to maintain judicial review of an administrative action, "holding that the plaintiffs would not be 'aggrieved' by the issuance of the permits and that, therefore, they did not 'have standing to challenge the administrative decisions.'" *Id.* at 289. The Court of Appeals explained that if the ALJ had, in fact, determined a party's entitlement to judicial review of the agency action, the ALJ exceeded her proper role:

> Under basic principles of administrative law, as well as the separation of powers requirement set forth in Article 8 of the Maryland Declaration of Rights, [] it is not the proper function of an administrative official or agency

*See also Clipper Windpower, Inc. v. Sprenger*, 399 Md. 539, 560-62 (2007) (determining that an entity that failed to satisfy the "statutorily provided criteria" for becoming a party to an administrative action before the Public Service Commission was not a party to the Commission's decision, and thus was not a "party in interest" entitled to apply for rehearing).

We should clarify here that a person or entity—even without standing to file a petition for review—may, depending on the circumstances, intervene as a party, as the MDH did in this case, or be brought into the case as a party. *See* SG § 10-222(d)(1) ("The court may permit any other interested person to intervene in a proceeding under this section.").

16

in the executive branch of government to decide whether a plaintiff or potential plaintiff has standing to maintain an action in court.

* * *

. . . . [W]ith respect to the allocation of functions between administrative agencies and the judiciary, the determination of whether a person has standing to maintain an action in court is exclusively a judicial function.

*Id.* at 290 (internal footnote omitted). Standing for purposes of judicial review is properly determined by the circuit court, "through a motion or other pleading filed by [the appellee] to dismiss [the appellant] as a party, [the appellant's] answer thereto, and testimony if need be on the point." *Morris v. Howard Research & Dev. Corp.*, 278 Md. 417, 424-25 (1976). Moreover, the issue of standing is one of a "narrow category of issues" that courts of appeal will "sua sponte address" even if not raised by an appellant. *Joseph H. Munson Co., Inc. v. Sec'y of State*, 294 Md. 160, 168-69 (1982) (collecting cases)*, aff'd sub nom. Sec'y of State of Md. v. Joseph H. Munson Co., Inc.*, 467 U.S. 947 (1984).[11]

As the background chronology makes plain, MDH raised the issue of standing in the circuit court and—in addition to receiving a ruling dismissing the Facility's petition— preserved the issue of standing for our review. Having determined that the issue of standing is properly before us, we consider whether the Facility has met the conditions required to

---

[11] In his treatise on administrative law, Professor Arnold Rochvarg observes that "[S]tanding is an issue that an appellate court can address on its own motion, and can be raised even if not presented below. This is true because if the petitioner lacks standing, there may be no interested parties asserting adverse claims, and thus no justiciable controversy." Arnold Rochvarg, *Principles and Practice of Maryland Administrative Law* § 14.6 at 189-90 (2011). In *Sipes v. Board of Municipal and Zoning Appeals*, we explained that "[a]lthough the issue of standing may not be jurisdictional in nature, it does go to the very heart of whether the controversy before the court is justiciable. If the controversy is nonjusticiable, it should not be before the court, and therefore must be dismissed." 99 Md. App. 78, 87-88 (1994) (internal citations omitted).

17

maintain judicial review, which in this case, entails analyzing the requirements for the designation of authorized representatives under the Medicaid program.

## D. Requirements for the Designation of Authorized Representatives

The Medicaid program is a voluntary, cooperative federal-state program, which generally provides "funding to States that reimburse needy persons for the cost of medical care." *Wisconsin Dep't of Health & Family Servs. v. Blumer*, 534 U.S. 473, 479 (2002); *see* Maryland Code, Health—General Article ("HG"), § 15-103 (designating MDH to adopt rules and regulations under the program). When a state elects to participate in Medicaid, the state must develop and submit for federal approval a State Medicaid Plan that complies with the Medicaid Act and regulations promulgated by the Secretary of the United States Department of Health and Human Services. *See Dep't of Health & Mental Hygiene v. Campbell*, 364 Md. 108, 112 (2001) (citing 42 U.S.C. § 1396).

Federal law establishes minimum requirements under 42 C.F.R. § 435.923 for the designation of an authorized representative, generally defined as an individual or entity designated to act on behalf of an applicant or beneficiary of Medicaid benefits.[12] The federal regulation requires state agencies, such as MDH, to recognize Medicaid authorized representatives that meet the requirements of the federal regulation, but also permits states to establish their own requirements under state law:

---

[12] The MDH regulation, tracking 42 C.F.R. § 435.923, defines an "authorized representative" as "an individual or organization acting responsibly on behalf of the applicant or recipient in accordance with §§ B, C, D, and E of this regulation, in assisting with an applicant or recipient's application, renewal of eligibility, appeals, and other ongoing communications with the agency." COMAR 10.01.04.12A(1).

> Authority for an individual to act on behalf of an applicant or beneficiary *accorded under state law*, including but not limited to, a court order establishing legal guardianship or a power of attorney, *must be treated as a written designation* by the application or beneficiary of authorized representation.

42 C.F.R. § 435.923(a)(2) (emphasis added).

Under the federal regulation, state agencies must allow an applicant[13] or beneficiary[14] to designate an individual or organization to act on his or her behalf. 42 C.F.R. § 435.923(a)(1). Medicaid programs are *required* to "permit applicants and beneficiaries to designate an individual or organization to act responsibly on their behalf" in assisting with applications and communicating with state programs regarding eligibility, services, and appeals from denials of eligibility or service. *Id.* "Such a designation . . . must be permitted at the time of application and at other times." *Id.* In addition, the designation must include the applicant's signature. *Id.*

As permitted under 42 C.F.R. § 435.923, MDH promulgated COMAR 10.01.04.12 to address the designation of authorized representatives in Maryland. The regulation provides, in pertinent part:

> (1) An applicant or recipient may designate any individual or organization to serve as an authorized representative.
> (2) An authorized representative may be designated either:
>     (a) In writing, including the applicant or recipient's signature; or

---

[13] An "applicant" is defined as "an individual whose written application for Medicaid has been submitted to the agency determining Medicaid eligibility, but has not received final action. This includes an individual (who need not be alive at the time of application) whose application is submitted through a representative or a person acting responsibly for the individual." 42 C.F.R. § 400.203.

[14] "Beneficiary means a person who is entitled to Medicare benefits and/or has been determined to be eligible for Medicaid." 42 C.F.R. § 400.200.

(b) ***By providing proof of legal authority to act on behalf of an applicant or recipient.***

(3) Legal authority includes, but is not limited to those who are the:

(a) Applicant or, if applicant or recipient is a minor, recipient's parent;

(b) Applicant or recipient's legal guardian, if one has been appointed, or a person who has in good faith filed an application to be appointed the applicant or recipient's legal guardian but who has not yet been appointed the applicant or recipient's legal guardian;

(c) Applicant or recipient's healthcare surrogate as defined in Health General Article, § 5-605, Annotated Code of Maryland;

(d) ***Personal representative of the applicant or recipient's estate, or a person who has in good faith filed an application to be appointed the personal representative of the applicant or recipient's estate but who has not yet been appointed the personal representative of the applicant or recipient's estate;***

(e) Individual appointed to make legal or medical decisions on behalf of the applicant or recipient pursuant to a validly executed power of attorney; or

(f) Attorney or paralegal retained by the individual.

\*      \*      \*

(5) For individuals who lack the capacity to designate an authorized representative, for whom no other individual or organization has the legal authority to act under §B(2) of this regulation, . . . an authorized representative can be any individual or organization with a direct financial interest in the outcome of the hearing or whose employer has a direct financial interest in the outcome of the hearing who:

(a) ***In good faith is acting in the best interest of the applicant or recipient;***

(b) Declares that the applicant or recipient lacks legal capacity; and

(c) Declares that to the best of his or her belief, no other individual or organization is willing and able to act on the applicant or recipient's behalf.

COMAR 10.01.04.12B (emphasis added). The regulation further permits the designation

of an authorized representative under 10.01.04.12B(5) to "take place at any time, including,

but not limited to, the time of application, upon redetermination, upon filing an appeal, and

at the appeal hearing." COMAR 10.01.04.12C.

Our examination of COMAR 10.01.04.12 confirms that it meets the minimum requirements provided in 42 C.F.R. § 435.923.[15] First, as 42 C.F.R. § 435-923(a) requires,

---

[15] We set it out the pertinent provisions of 42 C.F.R. § 435.923 below for easy comparison with the State regulation:

(a)(1) The agency must permit applicants and beneficiaries to designate an individual or organization to act responsibly on their behalf in assisting with the individual's application and renewal of eligibility and other ongoing communications with the agency. Such a designation must be in accordance with paragraph (f) of this section, including the applicant's signature, and must be permitted at the time of application and at other times.

> (2) Authority for an individual or entity to act on behalf of an applicant or beneficiary accorded under state law, including but not limited to, a court order establishing legal guardianship or a power of attorney, must be treated as a written designation by the applicant or beneficiary of authorized representation.

(b) Applicants and beneficiaries may authorize their representatives to—

> (1) Sign an application on the applicant's behalf;
> (2) Complete and submit a renewal form;
> (3) Receive copies of the applicant or beneficiary's notices and other communications from the agency;
> (4) Act on behalf of the applicant or beneficiary in all other matters with the agency.

(c) The power to act as an authorized representative is valid until the applicant or beneficiary modifies the authorization or notifies the agency that the representative is no longer authorized to act on his or her behalf, or the authorized representative informs the agency that he or she no longer is acting in such capacity, or there is a change in the legal authority upon which the individual or organization's authority was based. Such notice must be in accordance with paragraph (f) of this section and should include the applicant or authorized representative's signature as appropriate.

(d) The authorized representative—

> (1) Is responsible for fulfilling all responsibilities encompassed within the scope of the authorized representation, as described in paragraph (b)(2) of this section, to the same extent as the individual he or she represents;
> (2) Must agree to maintain, or be legally bound to maintain, the confidentiality of any information regarding the applicant or beneficiary provided by the agency.

*     *     *

21

the MDH regulation plainly allows the *applicant or beneficiary* to designate an individual or organization to act responsibly on his or her behalf "through the applicant or recipient's signature." *Compare* 42 C.F.R. § 435.923(a)(1), *with* COMAR 10.01.04.12B(2)(a). Second, MDH allows for designation of an authorized representative under state law to be treated as a written designation "[b]y providing proof of legal authority to act on behalf of an applicant[.]" *Compare* 42 C.F.R. § 435.923(a)(2), *with* COMAR 10.01.04.12B(2)(b), (3). Finally, in conformance with 42 C.F.R. § 400.203, the MDH regulation does not require that an applicant be alive when an application is filed but, as discussed in greater detail below, the application for a deceased applicant must be filed through the personal representative of the estate. *Compare* 42 C.F.R. § 400.203 (definition of applicant), *with* COMAR 10.01.04.12B(3)(d), C.

The Facility's contention that MDH has limited the "scope of authorization" or added special requirements in violation of federal law is incorrect. As addressed above, 42 C.F.R. § 435.923 allows an applicant—Ms. Turner in this case—to personally designate an authorized representative. 42 C.F.R. § 435.923(a)(1); COMAR 10.01.04.12 B(2)(a). The applicant must express her authorization by transmitting her signature through one of the manners specified in paragraph (f) of 42 C.F.R. § 435.923. Given that Ms. Turner was

---

(f) For purposes of this section, the agency must accept electronic, including telephonically recorded, signatures and handwritten signatures transmitted by facsimile or other electronic transmission. Designations of authorized representatives must be accepted through all of the modalities described in § 435.907(a).

42 C.F.R. § 435.923(a)-(d), (f).

deceased when the Facility purported to receive authority to act as Ms. Turner's authorized agent, she could not "sign" her authorization.[16]

Any valid designation of an authorized representative that does not require the signature of the applicant must, then, be accorded under state law pursuant to 42 C.F.R. § 435.923(a)(2). The MDH regulation defines various circumstances under which a person or entity can offer such "proof of legal authority to act on behalf of [the] applicant[.]" COMAR 10.01.04.12B(2)(b). Consequently, rather than limit the scope of authorization that is permitted under federal law, as the Facility argues, the MDH regulation expands the means of qualifying as an authorized representative, as permitted under 42 C.F.R. § 435.923(a)(2).

### E. The Facility Did Not Have Standing

The Facility contends that it had standing to file the petition for judicial review in the underlying case because it obtained authorization from the circuit court to serve as the Medicaid authorized representative through the MAR Order. We turn to COMAR

---

[16] The Facility's contention that its scope of authorization "survives death" under the federal and state regulations is not supported by law or fact in the case. First, as established above, even though 42 C.F.R. § 400.203 states that an applicant includes an "individual who need not be alive at the time of application," 42 C.F.R § 435.923(a)(1) provides that the initial designation of that representative must include the applicant's signature. The record does not include a designation of the Facility as Medicaid authorized representative signed by Ms. Turner. Furthermore, 42 C.F.R. § 435.923(c) expressly provides that a "change in the legal authority" may invalidate an authorized representative's power to act. Under "well-established principles of agency law, an agent's authority terminates upon the death of the principal." *Brantley v. Fallston Gen. Hosp., Inc.*, 333 Md. 507, 511 (1994).

10.01.04.12 and the Estates and Trusts Article to discern whether the Facility qualified as Ms. Turner's Medicaid authorized representative.

Although COMAR 10.01.04.12B offers several possibilities to serve as an authorized representative—*e.g.*, as an applicant's legal guardian or an individual authorized through a valid power of attorney—because Ms. Turner was deceased at the time the MAR Order was issued, our focus is limited to how authority can be obtained to act on behalf of a decedent. After considering every provision in COMAR 10.01.04.12 under which the Facility could possibly serve as the Medicaid authorized representative for Ms. Turner after she passed away, we conclude that the only option was to become the personal representative of Mr. Turner's estate, or "a person who has in good faith filed an application to be appointed the personal representative of [Ms. Turner's] estate[.]" COMAR 10.01.04.12B(3)(d).[17]

The Maryland Code (1974, 2017 Repl. Vol.), Estates and Trusts Article ("ET"), § 1-301 directs that: "[a]ll property of a decedent shall be subject to the estates of decedents law, and upon the person's death shall pass directly to the personal representative[.]" ET § 1-301(a). In turn, the control of the estate of the decedent is turned over to the personal representative:

> A personal representative has a right to and shall take possession or control of the estate of the decedent, except that property in the possession of the person presumptively entitled to it as heir or legatee shall be possessed by

---

[17] The Facility does not argue that it would qualify as a Medicaid authorized representative under COMAR 10.01.04.12B(5). We think this is prudent because the language of B(5), requiring that the representative "[i]n good faith is acting in the best interest of the applicant or recipient," is clearly intended to apply while the applicant is living.

the personal representative only when reasonably necessary for purposes of administration.

ET § 7-102. Among other enumerated powers, a personal representative "may prosecute, defend, or submit to arbitration actions, claims, or proceedings in any appropriate jurisdiction for the protection or benefit of the estate[.]" ET § 7-401(y)(1). *See also Rosebrock v. E. Shore Emergency Physicians, LLC*, 221 Md. App. 1, 12 (2015) ("Upon the death of the ward (now decedent), the *only* person who may prosecute an action on the decedent's behalf is the personal representative." (emphasis added)).

The Facility contends that MDH "wrongly asserted below that only personal representatives can pursue Medicaid appeals on behalf of a deceased individual" because Maryland law allows a special administrator to pursue such claims. The Facility quotes a segment from ET § 6-401 stating: "a special administrator may be appointed by the court whenever it is necessary to protect property prior to the appointment and qualification of a personal representative."[18] The initial problem with this argument is that the Facility ignores the provision in the statute that only "*[u]pon the filing of a petition . . .* a special

_____

[18] Throughout this opinion, we refer to the version of the Estates and Trusts Article in effect at the time of the underlying hearing in the circuit court. Since then, ET § 6-401(a) was amended to provide as follows:

(a) On the filing of a petition by an interested party, a creditor, or the register, or on the motion of the court, a special administrator may be appointed by the court:
      (1) If it is necessary to protect property before the appointment and qualification of a personal representative; or
      (2) On the termination of appointment of a personal representative and before the appointment of a successor personal representative.

2019 Md. Laws, ch. 197 (S.B. 398).

administrator may be appointed." ET § 6-401(a) (emphasis added). The Facility has not been appointed, nor petitioned to be appointed, as special administrator of Ms. Turner's estate. Moreover, COMAR 10.01.04.12 does not specify that a special administrator can serve as an authorized representative. Again, COMAR 10.01.04.12B(3)(d) expressly provides that only a "personal representative of the applicant or recipient's estate . . . or a person who has in good faith filed an application to be appointed the personal representative" may have the requisite "proof of legal authority," 10.01.04.12B(2)(b) to serve as the authorized representative of the decedent in this case.

Finally, we reject the Facility's hollow contention that the circuit court did not require express authority to grant the MAR Petition but could rely on its equitable and general jurisdiction. Under Maryland law, "[p]rimarily, [] the administration of a decedent's estate is committed to the Orphans' Court." *Tribull v. Tribull*, 208 Md. 490, 499 (1956); *see also Knox v. Stamper*, 186 Md. 238, 245 (1946) ("The general rule is that the personal estates of deceased persons should ordinarily be administered and finally distributed in the [o]rphans' courts."). Courts of equity intervene only to "remedy some evil or establish some right which [orphans' courts] are powerless to grant or establish." *Gaver v. Gaver*, 176 Md. 171, 189-90 (1939). While it is well-established that the orphans' court is "a court of special limited jurisdiction, [and] must be confined to the express letter of its authority," *DeFelice v. Riggs Nat'l Bank of Wash.*, 55 Md. App. 476, 478 (1983) (citation omitted), the orphans' court has "broad authority within the area of its express jurisdiction." *Kaouris v. Kaouris*, 324 Md. 687, 694 (1991). "Implicit in this grant of jurisdiction to orphans' courts is a restriction on the jurisdiction of state equity courts from

26

interfering with the administration of a decedent's estate." *Ibru v. Ibru*, 239 Md. App. 17, 34 (2018) (citing *Gaver*, 176 Md. at 189-90). Accordingly, the General Assembly has granted our orphans' courts authority over a decedent's estate and, correspondingly, conferred the personal representative with authority to act on behalf of the estate. The Court of Appeals' delineation of the scope of a court's equitable powers applies with noteworthy force here:

> Equity, like the common law, is not a 'brooding omnipresence in the sky.'[19] Equitable principles are applicable to limited subjects in limited circumstances[.]

*Cent. Sav. Bank of Balt. v. Post*, 192 Md. 371, 381 (1949). The General Assembly has established a comprehensive framework for the appointment of personal representatives and their respective obligations and authority. We will not eschew the General Assembly's clear direction by favoring "equitable relief" that is unmoored to a statute or the common law.

### *Conclusion*

We hold that the MAR Order was not validly obtained because the Facility was not the personal representative of Ms. Turner's estate at the time the order was issued. COMAR 10.01.04.12B(3)(d) (authorizing the personal representative of an applicant's estate, or a person who has in good faith filed an application to be appointed the personal representative, to apply for designation as authorized representative). Only a personal

---

[19] Justice Holmes expressed that "[t]he common law is not a brooding omnipresence in the sky, but the articulate voice of some sovereign or quasi sovereign that can be identified[.]" *S. Pac. Co. v. Jensen*, 244 U.S. 205, 222 (1917) (Holmes, J., dissenting).

representative may be designated as the authorized representative to prosecute an appeal from the denial of Medicaid benefits on behalf of a deceased individual. COMAR 10.01.04.12; ET § 7-401(y)(1). Consequently, because the Facility was not the personal representative of Mrs. Turner's estate, the Facility lacked standing to petition for judicial review from the agency's denial of Ms. Turner's application for Medicaid benefits.

We affirm the judgment of the circuit court.

**JUDGMENT OF THE CIRCUIT COURT FOR HOWARD COUNTY AFFIRMED; COSTS TO BE PAID BY APPELLANT.**

The correction notice(s) for this opinion(s) can be found here:

https://mdcourts.gov/sites/default/files/import/appellate/correctionnotices/cosa/2304s18cn.pdf